**WESTCHESTER FIRE INSURANCE COMPANY, Appellant,**

v.

**Connie Marie WENDEBORN et al., Appellees.**

**No. 5061.**

Court of Civil Appeals of Texas, Eastland.

Nov. 10, 1977.

Rehearing Denied Dec. 15, 1977.

Robert D. Batjer, Jr., and Don Seamster, Abilene, for appellant.

W. L. Burke, Jr., Abilene, for appellees.

McCLOUD, Chief Justice.

This is a suit for workmen's compensation death benefits. Connie Marie Wendeborn, surviving widow of Frank James Wendeborn, deceased, and Paula Wendeborn as Next Friend for Cynthia Margaret Wendeborn, surviving minor child of the deceased, sued Westchester Fire Insurance Company, alleging that Frank James Wendeborn was accidentally shot and killed while working in the course of his employment for the defendant's insured employer. Judgment was rendered for plaintiffs and defendant appeals. We affirm.

Defendant first contends the evidence conclusively establishes that the deceased was intoxicated at the time of his fatal injury or, alternatively, the finding that he was not intoxicated was against the great weight and preponderance of the evidence.

The jury determined, in the only special issue submitted, that the deceased was acting in the course of his employment when he received the injury. The jury was instructed that an injury received while the "employee is in the state of intoxication" is not in the course of employment. Tex.Rev. Civ.Stat.Ann. art. 8306, § 1(3) and art. 8309, § 1.

Dr. Joe Hall, a pathologist, who performed an autopsy on the deceased, testified that a blood-alcohol chemical analysis test was performed and the result showed the deceased's blood-alcohol content was 0.165 percent at the time of death. He stated that the American Medical Association had determined that every individual with a concentration greater than 0.15 percent would "have lost to a measurable extent some of that clearness of intellect and control of himself that he would normally" possess. The doctor stated that in his opinion, based on the test performed, the deceased was intoxicated at the time of the injury. Defendant asserts that a blood-alcohol test result of 0.165 percent should, as a matter of law, constitute a "state of intoxication" under the Texas Workmen's Compensation Act. Defendant has cited no authority for its contention and we have found none. The only cases cited refer to a "presumption" of intoxication, but such presumption is rebuttable. Tex.Rev.Civ.Stat. Ann. art. 6701*l*–5, Sec. 3(a); *Bolieu v. Firemen's & Policemen's Civil Service Commission*, 330 S.W.2d 234 (Tex.Civ.App.—San Antonio 1959, writ ref. n. r. e.). We hold that the testimony of the pathologist does not conclusively establish that Frank James Wendeborn was intoxicated at the time he was shot.

Defendant also asserts the finding that the deceased was not intoxicated was against the great weight and preponderance of the evidence. In reviewing this point, we must consider all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Frank James Wendeborn was shot at or about 11:00 p. m. on July 15, 1974, at the Tuxedo Mini-Mart, a grocery and beer store, operated and managed by the deceased. The witness, Smoot, testified that Wendeborn was "handing" him the gun when it fired. Smoot stated he was intoxicated and he and Wendeborn had been drinking beer during the afternoon and evening prior to the shooting. Four witnesses, Andrews, Ray Wright, John Wright, and Maxwell, testified that between 10:00 and 10:30 p. m. they stopped at the Mini-Mart store and each stated they observed the deceased and in their opinion he was not intoxicated. Two witnesses, Moody and Littlefield, observed the deceased at or about 11:00 p. m., shortly before the shooting, and they were of the opinion the deceased was not intoxicated. The rule is well established that anyone who has had an opportunity to observe the acts or conduct of a person on a particular occasion may state whether he was intoxicated. 2 McCormick & Ray, Texas Evidence § 1430 (2d ed. 1956). We hold the finding by the jury was not against the great weight and preponderance of the evidence.

Defendant next argues there was no evidence to support the finding that the injury to the deceased was of a kind and character originating in the work, trade or business of the employer. Alternatively, defendant

says the evidence was factually insufficient to support the finding or that the finding was against the great weight and preponderance of the evidence.

■ Wendeborn was on the job working as the store manager of the Tuxedo Mini-Mart on the night in question. He usually worked alone and he customarily kept a shotgun at the store which was located in a "secluded spot". There is evidence that persons who work in a secluded area are in a greater position of being robbed than someone working in a heavily populated area. Keeping firearms, however, was a violation of Mini-Mart's rules. There is not any direct evidence that anyone told Wendeborn about this rule or that he was aware of the rule. The sheriff of Haskell County testified that he was aware of a shooting incident at the Mini-Mart about thirty days prior to the accident in question. At that time, some person shot into the Mini-Mart while Wendeborn was working. Wendeborn told the sheriff, after the "fellow" shot at him, he was going to keep a loaded gun at the store. Tex.Rev.Civ.Stat. Ann. art. 8309, § 1(4) provides in part that an injury shall include:

". . . all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer . . ."

In *Gallaher v. United States Fidelity & Guaranty Co.*, 77 S.W.2d 312 (Tex.Civ.App.—Amarillo 1934, writ dism'd), an employee was accidentally shot when a shotgun slipped out of his car while the employee was cleaning oil tanks for his employer. The insurance carrier argued that the employee had injected a dangerous instrumentality into the employment which was not reasonably anticipated by the employer and not necessary to the employment. The court said:

". . . an accident arises in the course of and out of the employment when it occurs within the period of the employment at a place where the employ-

ee reasonably may be in the performance of his duty and while he is fulfilling that duty or engaged in doing something incidental thereto . . ."

After observing that the employee's work required him to move about in a sparsely settled area where robberies had been committed, the court said:

"We think the testimony is sufficient to sustain the jury's finding that the injury was sustained in the course of his employer's business. The evidence shows that he and his wife lived in a sparsely settled district, several miles from any town or community center. That he was charged with pumping a certain amount of oil each day from wells situated upon two different leases about six miles apart. That robberies had been committed in that vicinity and belts and other movable property stolen from the two leases, that one party had been kidnapped, and that he frequently had to perform a part of his duties after sundown. It is common knowledge that the whole country is flooded with crime and that crime conditions are aggravated in oil 'districts which, without exception, become the rendezvous for criminals of the worst class. Under such circumstances he would have acted unwisely in attempting to protect his employer's property without arming himself, and his fear of meeting with such characters was not unreasonable. Situated as he was, charged with the responsibility of protecting valuable property, we think the possession of the shotgun was incidental to the performance of his duties, as he was subjected to risks and hazards not reasonably inherent in the performance of such duties in more favorable localities."

In the instant case, the store was in a secluded area; it was open late at night; approximately a month before the incident in question, while Wendeborn was on duty, a shot was fired into the store; there was testimony that persons working in secluded areas are more subject to crimes of violence; and, that is one of the risks involved

in this type of work. We think that under the facts the jury could properly conclude that the keeping of the shotgun was incidental to the employment and performance of the deceased's duties.

■ The violation of the employer's rules regarding the keeping of firearms would not remove the deceased from the course and scope of employment. The controlling rule was recognized in *Maryland Casualty Co. v. Brown*, 131 Tex. 404, 115 S.W.2d 394 (1938) wherein the court said:

> ". . . While it seems to be the rule that a violation of instructions of an employer by an employee will not destroy the right to compensation, if the instructions relate merely to the manner of doing work, yet it seems to be held by the weight of authority that violation of instructions which are intended to limit the scope of employment will prevent a recovery of compensation . . ."

In *Brown v. Forum Insurance Company*, 507 S.W.2d 576 (Tex.Civ.App.—Dallas 1974, no writ), an employee was killed while flying a private plane on company business. This was a violation of the employer's rules and the employee was aware of the rules. The court held that the employee was acting in the furtherance of his employer's business and in using the aircraft he was merely violating a rule regulating the manner and method of performing the work.

We hold there was some evidence to support the finding that the injury was of a kind and character originating in the work, trade or business of the employer. Furthermore, after considering all the evidence, we hold the evidence was not factually insufficient to support the finding, and the finding was not against the great weight and preponderance of the evidence. *In re King's Estate, supra.*

We have considered all points of error and all are overruled. Judgment of the trial court is affirmed.