**UNITED PACIFIC INSURANCE COMPANY, Appellant,**

v.

**Glenda Elaine JONES, Individually and as Next Friend of Toni Michelle Jones and Steven Jay Jones, Appellees.**

No. 09–85–167 CV.

Court of Appeals of Texas, Beaumont.

May 15, 1986.

Rehearing Denied June 4, 1986.

Julie A. Owens, Fenley & Bate, Lufkin, for appellant.

George E. Chandler, Stephen J. Zayler, Williams, Byrd & Zayler, Lufkin, for appellees.

## OPINION

BROOKSHIRE, Justice.

Workers' compensation case for death benefits. Glenda Elaine Jones is the surviving widow of J.C. Jones. J.C. and Glenda had two children, Toni Michelle Jones and Steven Jay Jones. Glenda sued as next friend for the minors. J.C. Jones died in a truck collision on December 11, 1981. The defenses were that the decedent was intoxicated at the time of the fatal occurrence and he was not in the course and scope of his employment.

One version of the evidence—believed and found by the jury—was that Jones was a job superintendent for his employer, J. & S. Construction Company. On the date of the fatal collision, it was Jones' job responsibility to supervise and manage a road building crew. The crew had been working near Broaddus, Texas. A part of the decedent's job responsibilities was to put the working crew together. Jones and his crew were furnished transportation by J. & S. Construction Company. The crew was clearing roads, quitting at about 6:00 P.M. Jones transported the other employees to their homes after work on the last day of his life. This, too, was a part of his job. Another employee of J. & S. Construction Company testified that Jones needed to employ a heavy duty equipment operator to report for work on or about December 14, 1981.

Apparently, Jones had in mind trying to contact and trying to hire Joe Herring as a heavy equipment operator for his employer. There is some evidence that, at the time of the death of Jones, he was enroute to Joe Herring's house. Also, at the time of the collision resulting in Jones' death, there is some evidence that Jones was enroute to his own home. But M.C. Jones, a fellow worker, said that J.C. Jones had the intention of stopping by Herring's house on his own way home to discuss employing Joe Herring. J.C. Jones had not arrived at his home after leaving the Broaddus work site. J.C. Jones was killed shortly after entering a highway after dropping off M.C. Jones at an O–Kay Store on Highway 69 in Angelina County. There is some evidence to support the position of Glenda that, at the time of his death, J.C. Jones was concurrently proceeding toward his home place as well as having the intention and acting upon the intention of hiring or attempting to hire Herring as a heavy equipment operator.

The jury found that J.C. Jones was in the course of his employment for J. & S. Construction Company when he received his fatal injuries. Death benefits were awarded to the widow and minor children. This appeal followed.

### THE MOTION IN LIMINE

The Plaintiffs below filed a motion in limine seeking to exclude a blood test. The blood specimen was allegedly taken from the body of J.C. Jones at the funeral home. The test resulted in demonstrating a level of .24 alcohol by weight. The trial court suppressed the blood test results. The Motion in Limine was filed prior to the voir dire examination of the jury panel. The trial court ruled that the compensation carrier did not demonstrate that the blood specimen was properly authenticated under circumstances that would show the trustworthiness of the blood test.

By a second amended original answer, the affirmative defenses of intoxication, deviation from the course and scope of employment on the part of Jones, that Jones

was not in the course and scope of his employment, but was engaged on a personal mission, were pleaded as defenses in bar. The carrier made its full, well-developed bill of exceptions on the blood test question.

## THE TRUSTWORTHINESS OF THE BLOOD SPECIMEN

■ The first five points of error basically complain of the ruling of the trial court excluding the evidence proffered by the carrier touching upon the intoxication of the deceased worker. The first point of error specifically argues that the affidavit of John R. McCutcheon of the Texas Department of Public Safety Crime Laboratory, which the carrier said complied with *TEX.R.EVID. 803(6), 902(10)*, was admissible in the form tendered, and that the exclusion of this affidavit with the attached records was calculated to cause and probably did cause the rendition of an improper verdict.

The affidavit of McCutcheon set out that an *employee or representative of the crime laboratory division had personal knowledge of the act or condition recorded.* The affidavit recited that it was in the regular course of business of the Texas Department of Public Safety Crime Laboratory Division for an employee or representative of it to transmit information to be included in such memorandum or record; and, that the memorandum or record was made at or near the time of the event, act or condition recorded or reasonably soon thereafter. McCutcheon was a supervisor of the Toxicology Section of the Crime Laboratory. He was a custodian of the records of that division. Appellant cites *TEX.R.EVID. 803(6)* to require admissibility. But *803(6)* provides in part:

"... [U]nless the source of information or the method or circumstances of preparation indicate lack of truthworthiness."

The trial judge impliedly found such lack of trustworthiness.

*TEX.R.EVID. 902(10)* is cited by Appellant. But *902(10)* is subject to *Rule 803(6)*.

We find that certain recitation in McCutcheon's affidavit to have been impossible under this record, since the blood specimen was sent to the crime laboratory in Austin by Highway Patrolman Loose who was stationed in Lufkin.

## LACK OF TRUSTWORTHINESS UNDER TEXAS RULES OF EVIDENCE 803(6) AND 902(10)

We have read and analyzed the entirety of the Bill of Exception, being the excluded evidence on the question of intoxication of Jones. Among other witnesses, we have read and analyzed the entire testimony of Leslie Smith, a chemist with the Texas Department of Public Safety; Elwyn Gipson, the owner of the funeral home, and Patrolman Richard Loose. We find certain gaps in the chain of custody and chain of evidence impeaching the trustworthiness of the blood sample which, the Appellant argues, was taken from the body of J.C. Jones. *See and compare* the interesting case of *Westchester Fire Ins. Co. v. Wendeborn*, 559 S.W.2d 108 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.) The trial judge made no specific findings of fact or conclusions of law concerning the Motion in Limine. Therefore, we perceive that he found that this blood sample and the resulting tests lacked trustworthiness as required by *Rule 803(6), (7)*. *TEX.R.EVIDENCE 902(10)* requires that such a record, or set of records, must be admissible under *Rule 803(6)* or *803(7)*. We perceive no reversible error in the trial court's ruling on the Motion in Limine. Therefore, we overrule Appellant's Points of Error 1, 2, 3, 4 and 5.

## THE CHARGE OF THE COURT

Points of Error 6 and 7 complain of the trial court, in its charge, submitting to the jury these instructions:

"In answering the above question, you are instructed that an injury occurring while traveling to or from work is in the course of employment, if the employee is engaged in or about the furtherance of the affairs of business of his employer at

the time of the injury, whether upon the employer's premises or elsewhere."

But this instruction has to be read with other instructions immediately following it. The following instructions read: ·

"Keeping in mind the above instruction, you are further instructed that an injury occurring while traveling to or from work is in the course of employment, if:

"(1) the transportation is furnished as a part of the contract of employment or is paid for by the employer; *OR*

"(2) the means of transportation are under the control of the employer; *OR*

"(3) the employee is directed in his work to proceed from one place to another, and the injury occurred while he was so traveling; *OR*

"(4) the employee is authorized, expressly or impliedly, by his employment contract to travel in the performance of his duties, and the injury occurred while he was so traveling.

"You are further instructed that travel by an employee in furtherance of the affairs or business of the employer is not in the course of employment if such travel is also in furtherance of personal or private affairs of the employee, unless:

"(1) the trip to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the trip, and unless

"(2) the trip would not have been made had there been no affairs or business of the employer to be furthered by the trip." (Emphasis theirs)

These were the instructions attached to Special Issue No. 1. The jury found "We do"—that Jones was in the course and scope of his employment when his death occurred.

### COURSE OF EMPLOYMENT QUESTION

■ The owner of J. & S. Construction Company testified that he owned the truck that Jones was driving. He paid the expenses of the same—the upkeep, the gas and oil. Jones was to use it to carry necessary and needed supplies, materials and tools to and from the jobsite. Also, very importantly, Jones was to transport the working crew from their homes in Lufkin to the jobsite near Broaddus, where the crew was actually working for the forest service and building a road in a national forest. Jones was to transport the crew back to their homes after work.

Following *TEX.R.CIV.P. 277*, we find no error under this unusual record. The relevant part thereof reads:

"In submitting the case, the court *shall submit* such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict...." (Emphasis added).

We find the explanatory instructions and definitions were proper under this singular record.

Also, *TEX.R.CIV.P. 273* provides in relevant part:

"Either party may present to the judge and request such written instructions, special issues, definitions or explanatory instructions, as he desires to be given to the jury; and the judge *may* give them or a part thereof, or he may refuse to give them, *as he may see proper....*" (Emphasis added)

We hold the judge acted properly in giving these written definitions and explanations. Special Issue No. 1, we find, complies with *TEX.R.CIV.P. 273* and *277*. And it was not either directly or indirectly a comment on the weight of the evidence. It did not advise the jury of the effect of their answers. Therefore, we overrule Points of Error 6 and 7.

■ We determine that Point of Error 8 is without merit. It complains that a certain definition of "Injury in the Course of Employment" was not given. The refused definition or explanatory instruction was merely a shade, or phase, of the explanatory instruction or definition that was given to the jury. The Appellant was not entitled to both. Point of Error 8 is overruled.

Point of Error 9 complains of the trial court's refusal to submit an explanatory instruction to the jury. However, we find that the refused explanatory instruction or definition was another phase, or shade, of the one that was given by the trial court. No error is shown. Point of Error 9 is overruled. By like and similar reason, Point of Error 10 is overruled.

In *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984), the court wrote:

"This court's approval and adoption of the broad issue submission was not a signal to devise new or different instructions and definitions. We have learned from history that the *growth and proliferation of both instructions and issues come one sentence at a time. For every thrust by the plaintiff for an instruction or an issue, there comes a parry by the defendant. Once begun, the instructive aids and balancing issues multiply. Judicial history teaches that broad issues and accepted definitions suffice and that a workable jury system demands strict adherence to simplicity in jury charges.* (Emphasis added)

In *Haas Drilling Co. v. First National Bank in Dallas*, 456 S.W.2d 886, 889 (Tex. 1970), the court stated:

" '... [I]t is quite clear that there will be no reversal *in non-negligence cases* simply because the issue is too broad or too small. The trial court has *almost complete discretion,* so long as the issue in question *is unambiguous and confines the jury to the pleading and the evidence.'* ..." (Emphasis added)

Point of Error 11 contends that the jury's answer to Special Issue No. 1 "was so against the great weight and preponderance of the evidence as to be manifestly unjust." Adhering to the recognized standards of appellate review, we overrule Point of Error 11. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ. App.—Tyler, 1966, writ ref'd n.r.e.); Calvert, " *'No Evidence' and 'Insufficient Evidence' Points of Error"*, 38 TEXAS L.REV. 361 (1960); Garwood, *"The Question of Insufficient Evidence on Appeal"*, 30 TEXAS L.REV. 803 (1952).

The last Point of Error—being No. 12—contends that the counsel for Appellees' argument was "inadmissible, inflammatory and a misstatement of the law that could not be cured by objection or instruction." Further, it is contended that the argument was harmful error and was calculated to, and probably did, cause a rendition of an improper verdict in this case. We have read the argument. In the argument, we find only one objection having been made timely by the Appellant. The only objection was that there was no evidence whatsoever of the workers' compensation insurance policy being the only insurance policy in this case. That objection is not the same objection or complaint that Appellant urges on appeal. We determine that the argument of Appellees' lawyer was not reversible error. We find that it did not, in probability, cause the rendition of an improper verdict. We also find that his argument could have been cured, if it was improper, by objection and prompt instruction from the court. We determine that Point of Error 12 lacks merit; it is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.