**Lloyd Dixie STAPLETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 471-93.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1993.

Rehearing Denied Jan. 26, 1994.

---

Cynthia Russell Henley, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry and Don Crosier, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

The offense is felony possession of marihuana. In a bench trial on a plea of not guilty, the court found appellant guilty as charged, upon his plea of "true" found allegations of two prior convictions to be true, and assessed punishment at confinement for a term of thirty years.

### I

Appellant challenged sufficiency of the evidence in the court of appeals; he also contended that the trial court erred in admitting in evidence an audio tape recording of a telephonic report to the Houston Police Department from an individual who requested the police to come to her apartment and recover a bag of marihuana left there by her boyfriend. The court of appeals found the evidence sufficient and rejected the claimed evidentiary error. *Stapleton v. State*, 852 S.W.2d 632 (Tex.App.—Houston [14th] 1993).

Appellant brought both claims here, but we granted review only on the broad second ground, *viz:*

> "The court of appeals erred in holding that an audio tape recording was properly admitted."

### II

The Houston Police Department routinely records incoming calls from citizens directly onto a master tape along with the date and time as each is received by a telephone clerk. An officer working as a radio technician in the communication division of the department testified that he was the custodian of the tapes recording such calls and that the records are made in the regular course of the business of the department. From the master tape of recordings one is able to deter-

mine the precise time at which a particular telephone call is received, as well as its content.

The witness transferred the recorded call at issue onto a cassette and verified that it is a true and correct rendition of the original report and request made by the citizen as recorded on the master tape. The cassette was marked State's Exhibit 14, and the State proffered and it was admitted as a duplicate business record of the Houston Police Department.[1]

Appellant accepts that much, but points out that he objected on various grounds, including that "a proper predicate had not been laid because the voices were not identified," "lack of authenticity," and "hearsay" [in that "no foundation been laid nor any exception"]. Appellant's Brief, at 1–2.[2]

In his appellate brief as well as relying on *Edwards v. State,* supra, n. 2 *ante,* he asserted the State failed to "establish the predicate for the business records exception because there was no testimony that the information was transmitted by a person with personal knowledge," citing Tex.R.Cr.Evid. Rule 803(6). Brief for Appellant, at 13. In its appellate brief the State did not cite or discuss Rule 803(6) at all; instead it met the "predicate" argument with the authentication requirement in Rule 901(a), and suggested that the *Edwards* requirements are not "still valid" under the rules of criminal evidence. State's Appellate Brief, at 10–11.

The State now relies specifically on Rule 803(6) and authentication under Rule 901,

and continues to contend that *Edwards v. State,* supra, is no longer viable. State's Brief, at 5–6, 7–8.

The court of appeals upheld the position advanced by the State. It decided the issues primarily under the rules of criminal evidence, believing they "provide the proper foundation for the admission of evidence." The court did, however, also consider the factors set out in *Edwards v. State,* supra, note 2, *ante. Stapleton v. State,* at 635.[3] Appellant argued that "the biggest obstacle faced by the state was identification of the voices on the tape." See *Edwards,* at 73. The court of appeals surmounted that argument by pointing out that the caller identified herself as Sherry Short, and provided information about her address and the marihuana; identity of a speaker can be sufficiently established if the message reveals a knowledge of facts that only the speaker would be likely to know; additionally Short testified before the State introduced the tape and the trial court was in a position to determine whether the voice on the tape was indeed hers. All things considered, the court of appeals concluded that requirements of the rules of criminal evidence as well as *Edwards* had been met. *Stapleton,* at 635–636.

### III

Our review of the record reveals that the Court is confronted at the threshold with failure of the prosecutor ever to articulate any reason why the *content* of State's Exhibit 14 is relevant within the meaning of Tex.

1. Because the cassette is not included in the record filed in the Court, we have not heard the tape; nor are we inclined at this late date to order it up. Presumably, if the trial judge or either party deemed it important that a reviewing court be privy to the actual telephonic report in question, the record would contain the cassette. From the testimony we do know the substance of the report received by the communications division, and that it was not a "911" call.

2. As to the *"predicate"* objections, appellant cited no specific authority, although he probably had in mind *Edwards v. State,* 551 S.W.2d 731, 733 (Tex.Cr.App.1977), since he raised it in the court of appeals. In connection with the *"au-*

*thenticity"* objection he mentioned Tex.R.Cr. Evid. Rules 1003 and 1004. II S.F. 83–84; III S.F. 3–4.

All emphasis here and throughout is supplied by the writer of this opinion unless otherwise indicated.

3. Because counsel for appellant was permitted to listen to the master tape and compare it to the duplicate, and made no objection in that vein thereafter, the court of appeals assumed he was "satisfied that the copy before the court was a true and accurate copy [of the original]." *Id.,* at 635.

R.Cr.Evid. 401.[4] Indeed, when making his final objection to admission of the exhibit, appellant stated:

"Number three, I object to relevance that this is offered to prove the truth of what is asserted in the tape? [sic] It's not been authenticated to show relevance. In other words, we don't know who the voices on the tape are. We can hypothesize. If its offered for impeachment purposes I can see the point, *but if it's offered to prove something at issue in trial rather than impeachment, then I object.*"

III S.F. 4. The State made no response, and without calling on the prosecution for some explanation, the judge immediately overruled all objections and allowed the witness to "publish" the tape. *Ibid.* Evidence which is not relevant is inadmissible. Tex.R.Cr.Evid. 402. We will proceed on the assumption that the trial court found the evidence relevant to *impeachment,* and that the court of appeals agreed *sub silentio.*

**A**

 In pertinent part Rule 803(6) provides that records of regularly conducted activity are not excluded by the hearsay rule. Reading item (6) elliptically, we discern the germane prescription here is:

a record, in any form, of acts or events, made at or near the time *by,* or from information transmitted *by, a person with knowledge,* if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the record, all as is shown

by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

That is to say, the master tape is a record of a telephone call from a citizen ("act or event") reporting an occurrence to a telephone clerk who causes the report to be recorded on tape in the course of regularly conducted police activity as matter of regular practice of that activity.

There is a significantly requisite ingredient missing, however: neither telephone clerk, radio technician, nor any another person engaged in the police activity *had personal knowledge of the information reported by the citizen.* Therefore, the record incorporates a statement by the citizen, a person who is not part of the regularly conducted police activity and has no "business duty" to make the report. If the record is offered "to prove the truth of the incorporated statement, the record will be treated as 'double hearsay,' " and is thus "inadmissible for its truth unless it independently falls within an exception to or an exemption from the hearsay rule." S. Goode, O.G. Wellborn & M.M. Sharlot, *Texas Rules of Evidence Civil and Criminal* § 803.11, 33 Texas Practice 589 (1988); H.D. Wendorf, D.A. Schlueter & R.R. Barton, *Texas Rules of Evidence Manual* (3rd Ed.1991) VIII–68; *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298, at 305–306 (Tex.1962); see *Crane v. State,* 786 S.W.2d 338, at 354[31] (Tex.Cr.App.1990) (although record admissi-

---

4. In neither its appellate brief to the court of appeals nor in its brief on review to this Court does the State suggest in what respect the content of Exhibit 14 "had any tendency to make the existence of any fact that is of consequence to the determination of action more probable ... than would be without the evidence." Tex.R.Cr.Evid. Rule 401. In his brief appellant ventured to explain "tendency," *viz:*

"It is apparent from the evidence that the trial court must have relied on the tape recording as substantive proof of appellant's guilt. The only evidence that appellant ever possessed a garbage bag containing marijuana [sic] is the hearsay statement of the unknown

caller on the tape recording. The State offered no live testimony or proof. Therefore, there is proof within the record that the trial court relied on the improperly admitted evidence." *Id.,* at 14. In his brief on review, appellant does not reiterate that contention, perhaps because the court of appeals found the evidence sufficient and we did not grant review. Although the court of appeals noticed the content of the recorded report along with more germane evidence, *Stapleton,* at 633–634, it seems have treated the telephone call as part the chronology of developments in the case. In short, the position of the State as to the relevance of the content of State's Exhibit 14 remains elusive.

ble, content still subject to objection as hearsay within hearsay).[5]

## B

As to the continued viability of *Edwards v. State,* supra, we agree in essence with the State. The *Edwards* decision adopted the seven-pronged foundation for admissibility of "sound recordings" in evidence then utilized on the civil side, first approved in *Cummings v. Jess Edwards, Inc.,* 445 S.W.2d 767 (Tex. Civ.App.—Corpus Christi 1969), writ refused n.r.e. That foundation was, in turn, recommended from a collation of common law cases by an annotation in 58 A.R.L.2d 1024, § 2 at 1027–1028. *Edwards,* at 733, and *Cummings,* at 772–773, both supra. The prescribed conditions adopted in *Edwards* for testing admissibility of sound recordings only were designed essentially to ensure "capability" of the recording device and "authenticity" of the product. Moreover, some of the requirements are inferable from certain testimony and need not be shown with the same particularity required for other mechanically acquired evidence. *Edwards,* at 733.

Rule 803(6) is Federal Rule 803, with one minor change in definition of "business" taken from the old business records statute, former article 3737e, R.C.S., and despite the difference in federal language and in the former statute, the "foundation requirements of Rule 803(6) are identical to those of the previous statute." *Goode, Wellborn & Sharlot,* supra.

Rule 901 prescribes the requirement for authentication and identification, the general rule being that "as condition precedent to admissibility," such requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a).

It is clear that the rules of criminal evidence now govern criminal proceedings in our courts except where otherwise provided; just as clearly the rules have hierarchical governance above the common law, although where possible any inconsistency is to be removed by reasonable construction. Tex. R.Cr.Evid. Rule 101(b) and (c). That Rule 803(6) is practically the same as the former civil statute elevates precedence of the rule even more over judicially crafted common law adopted in *Edwards v. State,* supra. Although Rule 901 is not statutorily based, and "does not indicate when and in what respect evidence must be authenticated," but turns on whether "logical necessity" requires authentication, *Goode, Wellborn & Sharlot,* supra, § 901.1, at 620, this rule also has precedence ahead of the common law.

Furthermore, in allowing Rule 803(6) and Rule 901(a) and (b), respectively, to supplant the "foundation" requisites, including the "authenticity" prong, enumerated in the common law formulation adopted in *Edwards,* supra, we fail to perceive any material inconsistency.

Rule 803(6) lays down conditions for excepting from the hearsay rule of all kinds of

---

5. The *Crane* court had just concluded that a transcript of telephonic statements made in conversations between defendant while he was incarcerated and other persons related to him, captured on tape by the sheriff's office, is not the kind of business record contemplated by Rule 803(6). One reason relies on a part of the "unless" clause, *viz:* unless the source of information indicates "lack of trustworthiness." *Id.,* at 353. The Court ruled out the "information" on the theory that "the statements were self-serving hearsay," generally inadmissible if not within some other exception. *Id.,* 353–354.

With deference, the correct analysis is that the "information" recorded on the tape was inadmissible simply because the "information" was not "transmitted by [ ] a person with knowledge" in the course of regularly conducted business activity, i.e., an employee engaged in such activity within the sheriff's domain. *Goode, Wellborn & Sharlot,* supra, at 589. As the Supreme Court made clear in *Skillern & Sons, Inc. v. Rosen,* supra:

"Some employee or representative who either made the record or transmitted the information to another to record must have had *personal knowledge* of the act, event or condition in order for such record to be admissible under the business records exception to the hearsay rule.... [S]tatements as to how an accident happened or where it happened, age, medical history, etc., do not become particularly trustworthy just because it is hospital routine to record them and they should be excluded [unless admissible on other grounds]."

*Id.,* at 305–306 (emphasis in original).

records kept by regularly conducted, broadly defined, business activity, of which a "sound recording" may be merely one. The primary purpose of Rule 803(6) is to impose requirements for "qualifying" such records, and the thrust of the requirements is to ensure verity of substantive content, only incidentally relating to mechanical means of making it of record.[6] Rule 803(6) thus embraces and subsumes the *Edwards* test insofar as the latter may address conditions warranting *trustworthiness* of *content.*

Rule 803(6) also mentions "method or circumstances of preparation" as indicia of *"lack* of trustworthiness." Any attempt to make a global interpretation of applicability of that clause to records other than electronic recordings is inappropriate here. Legislative history reflects concerns about "source of the recorded information," "entries in opinion form," "motivation of the informant" (i.e., the person making the report, or transmitting the information, "with knowledge"), and "involvement as participant in the matters recorded."[7] Suffice it to say that in a given case some of those concerns may extend to "method or circumstances of preparation" of electronic recordings.[8]

Coupling the qualifying requisites of Rule 803(6) with the authentication requirement in Rule 901(a), along with its illustrative examples in, e.g., (b)(4), distinctive characteristics; (b)(5), voice identification; (b)(6), telephone conversations; (b)(9), process or system, we conclude that the germane rules of criminal evidence have incorporated substantially the seven-pronged test of *Edwards.* Simply stated, our rules supersede the *Edwards* test; it is no longer needed as an authoritative guide for admissibility of "electronic recordings" including "sound recordings." See *Narvaiz v. State,* 840 S.W.2d 415, at 430–431 (Tex.Cr.App.1992); *Crane v. State,* 786 S.W.2d 338, at 350–352 and 352–353 (Tex.Cr.

**6.** Thus the "memorandum, report, record, or data compilation, in any form" must be made and kept in the course of regularly conducted business activity, routinely made as matter of regular practice, at or near the time of the act or event, by someone with knowledge or from information transmitted by a person with knowledge, both acting in the regular course of the business and having a business duty to report. *Goode, Welborn & Sharlot,* supra, at 587–588.

**7.** Notes of Advisory Committee on 1972 Proposed Rules, Federal Code Criminal Code and Rules (West 1993 Edition) 273–274.

From the discussion pertinent here, it appears the first concern is the situation in which "the supplier of information does not act in the regular course of business," so that "an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." An example given is "the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not."

The third concern is personal "motivation to be accurate," the emphasis on records of routine operations is "significant only by virtue of impact on motivation to be accurate." "Absence of routineness raises lack of motive to be accurate." * * * "The decisions hinge on motivation and which party is entitled to be concerned about it.... Formulation of specific terms which would assure satisfactory results in all cases is not possible. Consequently the rule proceeds from the base that records made in the course of regularly conducted activity will be taken as admissible but subject to authority to exclude if 'the sources of information or other circumstances indicate lack of trustworthiness.'"

See and compare, e.g., *Curran v. Unis,* 711 S.W.2d 290, at 292–296 (Tex.App.—Dallas 1986) no writ (income tax returns prepared from spread sheets, in turn prepared from general ledger cards reflecting daily bookkeeping entries sufficiently trustworthy and contemporaneous with transaction described and made with clear incentive to report profits fairly and accurately); *United Pacific Ins. Co. v. Jones,* 710 S.W.2d 760 (Tex.App.—Beaumont 1986), writ refused n.r.e. (records of post-mortem test lacked trustworthiness because certain recitations in Rule 901(b)(10) affidavit "impossible" and because of certain gaps in chain of custody and chain of evidence of blood sample).

**8.** For example, in making and keeping in the course of regularly conducted police activity a master tape recording of incoming calls as the one at issue here, it occurs to us the telephone clerk taking a call from a citizen will seek to obtain and record personal data, e.g., name, address, telephone number, *et cetera,* as well as enough information regarding the matter that enables the appropriate police officer to evaluate purported identity and other circumstances of the caller and to determine sufficiency of the information in order to decide whether and, if so, how to act on the report. As a matter of "logical necessity," then, unless there is some indication of lack of trustworthiness, independent verification of identity, *et cetera* is optional.

App.1990); cf. *Brooks v. State*, 833 S.W.2d 302, at 304–305 (Tex.App.—Fort Worth 1992), PDR refused; *Juhasz v. State*, 827 S.W.2d 397, at 400 (Tex.App.—Corpus Christi 1992), PDR refused.

## III

■ As a general proposition, then, Exhibit 14 was admissible for purposes of impeachment insofar as it identified Short as, in the words of the validating witness, "a citizen calling the police department for public service." However, the State failed to conduct the proper exercise to allow the trial court to admit it for that purpose.[9] Still, the factual statements of the caller are inadmissible for the truth of the matter she asserted. See 784, *ante*. Accordingly, we hold the court of appeals erred in finding the trial court correctly admitted the tape recording. *Stapleton v. State*, supra, at 636.

Therefore, we reverse the judgment of the court of appeals and remand the cause to that court to conduct a harm analysis pursuant to Tex.R.Cr.App. Rule 81(b)(2).

CAMPBELL and OVERSTREET, JJ., concur in the result.

McCORMICK, P.J., and WHITE, J., dissent.

MILLER, J., joins all of the opinion except that part remanding this case to the court of appeals for a harm analysis. See *Washington v. State*, 856 S.W.2d 184 (Tex.Cr.App. 1993) (Miller, J., concurring & dissenting).

---

9. After Short denied making the telephone call to the police department on cross examination, on redirect the State again drew another denial from her. Although the State questioned Short in a manner to impugn her denial, the prosecutor never followed through with a proper mode of impeachment by confronting her with State's Exhibit 14. See Tex.R.Cr.Evid. Rule 612.