**Lloyd Dixie STAPLETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. C14–92–00324–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 28, 1994.

Cynthia Russell Henley, Houston, for appellant.

Allen Curry, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

**OPINION ON REMAND**

ROBERTSON, Justice.

On original submission we affirmed appellant's conviction, finding the evidence sufficient and finding admissible a police-recorded conversation from a caller requesting they pick up a bag of marijuana left at her house by her boyfriend. On petition for discretionary review the court of criminal appeals found the tape recording to be inadmissible and remanded the case to us for a harm analysis. We again affirm.

Following remand, 868 S.W.2d 781, both appellant and the state filed a brief. In his brief appellant identifies "the nature of the error"[1] as the tape recording being "the only

---

1. One of the several factors to be examined in a harmless error analysis as dictated by *Harris v.* *State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

piece of evidence which connected appellant with the bag of marijuana." It seems inconsistent to us that a harm analysis dictated by *Harris* be conducted when the error is the admission of evidence and trial was to the court and not the jury. This is so because in a court trial it is presumed the trial judge disregarded any inadmissible evidence. It appears the only issue presented, therefore, is whether there is sufficient evidence to sustain the conviction. Appellant appears to agree because of his conclusion: "Because the record is devoid of any properly admitted evidence that appellant ever possessed the bag of marijuana that the officers recovered, yet the trial court found appellant guilty, appellant was clearly harmed by the admission of the audiotape recording."

■ The evidence, excluding the taped telephone call, viewed in the light most favorable to the verdict, is as follows. Houston Police officers Williams and Riddle, in response to a call, went to 197 Goodson, apartment 61, and were admitted either by Sherry Short (according to the Officer Williams) or by her son, Terrence (according to Terrence). Williams testified they were directed to Sherry Short's bedroom closet where they recovered a large brown plastic garbage bag which contained eleven ziplock packages—each of which contained marijuana—totalling some 14.9 pounds of marijuana. Officer Williams testified that Sherry Short supplied them with a picture of the suspect that she said the marijuana belonged to, and gave them a description of the vehicle that the suspect would be driving. He stated they then "secured the marijuana" and set up surveillance in the apartment parking lot; that sometime later they observed the automobile described by Short arrive and begin to park; that when they, wearing police narcotic raid gear, exited their vehicle, the suspect attempted to back out but they yelled for him to stop and that he did. Williams testified that the driver of the car matched the picture Short had given her.

Terrence Short, the seven-year old son of Sherry Short, testified he was at their apartment when appellant and another man and woman came; that appellant was carrying a large plastic garbage bag that "looked similar" to the bag exhibited to him at trial that contained the marijuana; that appellant carried the bag into his mother's bedroom and that when he came back out he was empty-handed.

Sherry Short testified she lived with her two children in apartment 61 at the address in question; that on the day in question she was upstairs in another apartment "doing hair"; that she came downstairs and a policeman was at the door. Her testimony follows:

> I asked him what he wanted at my door because I thought maybe he had the wrong door. I said, what you want? And he said someone brought a large bag. Do you know a guy by the name of Lloyd Stapleton? I say, yes ... And he say, well, he brought a large bag. And I say, well, if you want to you can come on in because I ain't got nothing to hide. And he came on in. . . . I went to the phone and call Beverly, a friend of mine. And told her to come downstairs because they ain't going to stick me with nothing. And she came downstairs right away. . . . They kept saying, is he coming back? I said, well, he didn't tell me. He just said he was going to call me. . . . They said, we are going to go on and take the bag now. . . . I say, don't he supposed to have the bag on him for you all to arrest him? He said, yes. I say, well, ain't you all doing it the wrong way because if I'm not mistaken I do know he got to have the evidence in hand.

She further testified that the bag of marijuana came from her bedroom closet; that she had never seen it before and that she did not use garbage bags. She stated she had dated appellant for about five years and that they were boyfriend and girlfriend. Finally she stated that several hours later the police returned to her door and told her they had arrested her boyfriend, and that at the request of the police officer she went to the parking lot and identified appellant's automobile. Finally the final question to Sherry Short and her response was:

> Q: Of course, if you called the police that would mean you would be dropping your boyfriend in the grease so to speak, right?

A: I wouldn't call it that. I believe I call it I would got in trouble. I didn't look at him. I looked at myself. And then I was thinking about they going to take my children. I ain't fixing to let that happen.

These historical facts provide sufficient circumstantial evidence for a rational trier of fact to find that appellant possessed the marijuana. In reviewing the sufficiency of the evidence, an appellate court, faced with a record of historical facts that supports conflicting inferences, must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved such conflicts in favor of the prosecution and must defer to that resolution. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979); *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Farris v. State*, 819 S.W.2d 490, 495 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992). Thus, it appears to us that our inquiry should stop here.

■ However, if it is necessary in a court tried case, where the error is the admission of evidence, to conduct the examination dictated by *Harris*, we find beyond a reasonable doubt that the admission of the tape recording was harmless. *Harris* provides that we must examine (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the state, (4) its collateral consequences, (5) how much weight a juror would probably place on the error and (6) whether declaring the error harmless would encourage the state to repeat it with impunity. *Harris*, 790 S.W.2d at 587.

In looking at the source and nature of the error, we must determine whether the state intended to taint the trial in offering inadmissible evidence. *Higginbotham v. State*, 807 S.W.2d 732, 735 (Tex.Crim.App.1991). While the court of criminal appeals held the factual statements of the caller were inadmissible to prove the truth of the matter asserted, the court held that the tape was admissible for impeachment purposes, but "the State failed to conduct the proper exercise to allow the trial court to admit it for that purpose."[2]

Thus, there simply is no basis for a finding that the state intended to taint the trial in offering inadmissible evidence.

The next exercise is to determine if the state emphasized the improper evidence. The entire state's argument, quoted below, stressed the sufficiency of the circumstantial evidence showing appellant's guilt and never mentioned the tape recording.

MR. CROSIER: Your Honor, what the evidence shows in this case is that Lloyd Stapleton did possess marijuana.

You heard testimony from Terrence Short, a seven year old child, who told the Court that he observed Lloyd Stapleton carrying a bag into the house and he walked back into his mother's bedroom, Sherry Short's bedroom, with the bag. He came out of the bedroom. He didn't have the bag then. He and his two friends left the apparent [sic].

Sherry Short testified that she did not keep any other garbage bags in her bedroom.

You had testimony from Terrence Short he could not positively identify the bag. He did tell the Court the bag that he saw here in Court, State's Exhibit Number Two, I believe, looked at least the same or substantially similar to the bag that the defendant in this case carried into the apartment. That bag was later seized and was determined to be marijuana at least, the chemist told us, 14.9 pounds.

I think the evidence is clear that Lloyd Stapleton possessed marijuana on the date in question and I ask the Court to find Lloyd Stapleton guilty.

The next factor—collateral implications of the error—contemplates the disparaging of a sole defense. *Higginbotham*, 807 S.W.2d at 732. Because appellant did not present any defense it appears that this factor is not implicated. Likewise, because this case was tried before the court, the next factor—how much weight a juror would place on the error—is not implicated.

---

**2.** The court of criminal appeals explained that "the prosecutor never followed through with a proper mode of impeachment by confronting her with State's Exhibit 14" (the tape).

Finally, we are supposed to examine whether declaring the error harmless would encourage the state to repeat it with impunity. Although the prosecutor never articulated a reason for the admission of the tape, he did not specifically offer it to prove the truth of the statements made on the tape. Therefore, what we have already stated above answers this inquiry—since the tape was admissible for impeachment of Sherry Short, failure of the prosecutor to satisfy the "proper exercise," as held by the court of criminal appeals, seems to us immaterial to the question of whether declaring the error harmless would encourage the state to repeat the error with impunity.

We, therefore, conclude that the error found by the court of criminal appeals is harmless beyond a reasonable doubt and affirm the judgment of the trial court.