**AFFIRM; Opinion issued March 22, 2013**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00166-CR

**MICAH TROY DUNCAN, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

On Appeal from the 15th Judicial District Court
Grayson County, Texas
Trial Court Cause No. 060104

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Francis

Micah Troy Duncan appeals his conviction for capital murder. After the jury found appellant guilty, the trial court assessed punishment at life without parole. In six issues, appellant claims the evidence is insufficient to support his conviction and the trial court erred by excusing a juror, admitting certain evidence, and failing to properly instruct the jury. We affirm.

On the morning of September 9, 2010, Sherman paramedics responded to a call about a child not breathing. When they arrived, they found appellant outside an apartment frantically waving. They entered the apartment and found fifteen-month-old Gabriel Goshorn on the floor. Although he had a pulse, Gabe was not breathing. Appellant told the paramedics Gabe had been eating pancakes and suddenly stopped breathing. The paramedics checked for obstructions, and finding none, transported him to the emergency room. After having a CT scan, Gabe was

airlifted to Children's Medical Center in Dallas where he died from massive head injuries. Appellant was arrested and convicted of capital murder.

In his fifth issue, appellant claims the evidence is legally insufficient to support his conviction. Appellant claims no evidence establishes he caused the injuries to Gabe that resulted in the child's death.

In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). We do not engage in a second evaluation of the weight and credibility of the evidence but ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

A person commits capital murder if he intentionally or knowingly causes the death of an individual under six years of age. Act of May 19, 2005, 79th Leg., R.S., ch. 428, § 1, 2005 Tex. Gen. Laws 428, *amended by* Act of May 28, 2011, 82nd Leg., R.S., ch. 1209, § 1, 2011 Tex. Sess. Law Serv. 3235, 3235 (current version at TEX. PENAL CODE ANN. § 19.03(a)(8) (West 2011)). Direct evidence of the elements of the offense is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The identity of the person committing the offense may be proven by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper*, 214 S.W.3d at 14–15. Circumstantial evidence alone may be sufficient to establish guilt. *Id*. at 15.

2

At trial, paramedics Justin Hall and Brad Iams stated they responded to the call about the child. When they arrived, appellant told them Gabe had been eating pancakes when he suddenly stopped breathing. Hall noticed the highchair tray was clean and did not have pancakes or food on it. The two men checked Gabe's airway for obstruction but found none. As they were placing him in the ambulance to take him to the emergency room, Gabe's mother, Megan, arrived and rode with the paramedics to the hospital.

Heather Huffman was the charge nurse on duty in the emergency room at the Wilson N. Jones Hospital in Sherman when Gabe arrived around 8:15 in the morning. Initially, he had no bleeding or signs of bruising. Dr. Sharon Malone, the emergency physician, placed an endotracheal tube for ventilation. Huffman asked appellant for a patient history, and he told her Gabe had been eating pancakes, but finished eating and was walking around. Appellant handed Gabe a bottle, and the child collapsed and started convulsing. After assessing Gabe as unresponsive and neurologically impaired, Malone ordered a CT scan.

After Gabe returned from having the scan, bruises began appearing on his head and face. According to Malone, the scan was "quite an abnormal scan" showing an "impressive skull fracture" from the base of the skull to the top of the head. Malone, an emergency room physician since 1998, testified she had not previously seen a fracture this large in a child of Gabe's age. The scan also showed a large amount of blood in and around his brain. Malone stated the injury was from trauma. Malone cared for Gabe until the air ambulance took him to Children's Hospital.

Dr. Matthew Cox is a pediatric doctor at Children's Medical Center and the Medical Director of the Reach program that refers and evaluates "at risk" children when there are concerns of physical or sexual abuse. Gabe arrived and was admitted to the intensive care unit.

Cox said Gabe had multiple head injuries, bleeding around the brain, massive brain swelling, a large skull fracture of the occipital bone, scalp swelling, facial bruises, and extensive, multiple-layer retinal hemorrhages in the back of his eyes, described as another indicator of a severe head injury. On a scale of one to ten, with ten being the most severe, Cox rated Gabe's head injury as a ten, "almost the most severe head injury" he had seen. According to Cox, kids may fall and have skull fractures on a frequent basis, but "this type of fracture and how big it was in the bone involved are unusual." Gabe's injuries were markers of severe trauma and not routine, household trauma seen in children who fall off changing tables or beds.

Cox ordered a second CT scan. The brain showed considerable brain tissue swelling, and Cox was unable to see a lot of the normal structures of the brain. Clinically, Gabe did not have any normal neurological function and showed no signs of life; in other words, he met the criteria for brain death. Cox evaluated Gabe's injuries and said the child received a major blow to the back of the head as well as to the front. When asked if Gabe's injuries could have occurred from falling out of his highchair or being tossed in the air and dropped, Cox said neither scenario would explain the pattern or severity of injuries Gabe suffered. Gabe was kept alive for four days while his father returned from Iraq.

The medical examiner, Dennis Rhee, confirmed Cox's explanation of Gabe's injuries, stating Gabe died from blunt force head trauma. Rhee said Gabe's injuries were too severe to be consistent with a fall from a highchair or from being tossed in the air and hitting the floor.

Christine McMillion worked the night shift with appellant at the Texas Instruments facility around the time of Gabe's death. She said appellant and Megan frequently argued on the phone, and appellant told her the arguments dealt with disciplining Gabe. Appellant said Megan did not need to pick him up so much and needed to stop "coddling him." He also thought she

4

should spank Gabe. The day before Gabe's death, appellant told McMillion "tomorrow would be [his] day with Gabe and mama's not going to have a say in it. I will discipline him the way that I want to."

Gabe's mother, Meagan Goshorn, and Gabe's father, who was stationed in Iraq, were married but separated. Goshorn met appellant while both were working at a restaurant in Sherman. They began talking and texting, but the relationship progressed and in early June 2010, appellant, along with his two young daughters, moved in Goshorn's apartment. In Goshorn's opinion, Gabe did not like appellant and often cried or threw a tantrum when with him. Goshorn and appellant disagreed on basic parenting methods; appellant felt Gabe needed more discipline.

On the morning of September 9, 2010, Goshorn and appellant smoked marijuana in the bathroom. Appellant then went to the kitchen and made pancakes for the family. His three-year-old daughter, McKenzie, ate breakfast and got ready for preschool. Just before Goshorn left to take McKenzie to school, appellant woke up Gabe. Although Goshorn wanted Gabe to sleep longer, appellant insisted the child needed to eat breakfast. Appellant also told Goshorn he wanted to have "daddy day" where he was in charge of the children and did everything with them, including discipline. When Goshorn returned, there was an ambulance at the apartment complex and paramedics were attending Gabe. Goshorn got in the ambulance and rode to the hospital with her son. At the hospital, appellant told her Gabe "gritted his teeth and fell over." After the emergency physician ordered a CT scan, appellant told Goshorn that Gabe fell and hit his head.

Appellant testified he fed Gabe breakfast and then cleaned the kitchen. When Gabe tried to climb the chair at the computer desk, appellant picked him up and began tossing Gabe in the

5

air and catching him under his arms. Appellant referred to it as playing "rocket ship." While in the air, Gabe would spin, turning all the way around. On the third toss, appellant missed and caught Gabe by the feet. Gabe hit his head and cried. Appellant held him, telling him it was "okay," got the bottle, and started to put Gabe down. He noticed Gabe's face was "scrunched up, like gritting his teeth" and appellant assumed he was getting ready to cry because he was setting him down. Appellant tried to stand Gabe on his feet but when he let go, Gabe fell back and hit his head. Appellant realized something was wrong, started CPR, and called 911. Appellant admitted smoking marijuana the morning of Gabe's death, and he conceded he did not tell anyone about tossing Gabe and Gabe hitting his head until he testified at trial. He admitted his actions caused Gabe's death but disagreed that he intentionally did so.

Viewing the evidence in the light most favorable to the verdict, the record shows appellant talked about Gabe needing more discipline, Gabe was alive at the time Goshorn left to take McKenzie to school, appellant was the only adult with Gabe while Goshorn was gone, Gabe was nonresponsive and not breathing when the paramedics arrived less than fifteen minutes later, Gabe had bruising and severe head trauma that resulted in his death, and the medical experts at trial testified Gabe's injuries were too severe to have been caused by falling on the floor, falling from a highchair, or being tossed in the air and dropped. We conclude the evidence is legally sufficient to support appellant's conviction for capital murder of a child under the age of six years. We overrule appellant's fifth issue.

In his first issue, appellant contends the trial court erred by excusing juror Anne Lawson over appellant's objection. Under this issue, appellant claims Lawson did not have a disability that "couldn't be cured."

6

Under article 36.29 of the code of criminal procedure, the trial court has discretion to determine whether a juror has become disabled and, if appropriate, to seat an alternate juror. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). Article 36.29 does not define "disabled," but the court of criminal appeals interprets article 36.29 to require a disabled juror suffer from a "physical illness, mental condition, or emotional state that would hinder or inhibit the juror from performing" her duties as a juror or that "the juror was suffering from a condition that inhibited" her from "fully and fairly performing the functions of a juror." *Id*. To support its decision that a juror is disabled, the trial court must make a finding, sufficiently supported by the record, that the juror was disqualified, disabled, or unable to perform the duties of a juror. *Id*. Absent an abuse of discretion, we will find no reversible error. *See Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003).

Following voir dire, the jury and one alternate juror were sworn; the following morning, trial began. As the second witness began to testify, one of the State's attorneys reported to the trial court that juror Lawson had fallen asleep and "one of the ladies next to her acts like something is wrong with her." The jury recessed, and a nurse examined Lawson who told the nurse she suffered from lupus. Lawson explained that the disease creates a "lupus fog" and that she has good days and bad days. The nurse reported Lawson "faded out a couple of times" while she was talking to her.

Outside the jury's presence, the trial court noted for the record that Lawson was having problems staying awake and asked Lawson if she could continue. When Lawson indicated she could, the trial court allowed her to remain, but cautioned her that both sides were entitled to have jurors who were awake and attentive to the evidence. Just before lunch, the trial court again noted for the record that Lawson continued to fall asleep.

Shortly after lunch, the jury again recessed. The trial court noted Lawson had not been able to keep her eyes open for "more than about thirty or forty seconds at a time," had dropped her pen twice, and was distracting the other jurors. When questioned, Lawson said she had two small seizures since lunch and did not feel she could continue. The trial court excused her under article 36.29 and seated the alternate juror in her place.

The record clearly reflects Lawson was unable to stay awake or focus on the testimony during the first several hours of trial and was distracting other jurors. Lawson told the trial court she had two small seizures and could not continue. Under these circumstances, we cannot conclude the trial court abused its discretion in excusing her as disabled. We overrule appellant's first issue.

In his second issue, appellant contends the trial court erred by admitting State's exhibits 11–14, 16–19, and 21, the audiotaped recordings of jail phone conversations between appellant and other parties. Appellant claims these exhibits were not properly authenticated and identified under evidentiary rule 901.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion by admitting evidence only when the decision lies outside the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010).

The requirement of authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. S*ee* TEX. R. EVID. 901(a); *Druery v. State*, 225 S.W.3d 491, 502–03 (Tex. Crim. App. 2007). Examples of authentication or identification include testimony of a witness with knowledge "that a matter is what it is claimed to be" and "[i]dentification of a voice, whether heard firsthand or through

8

mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker." Tex. R. Evid. 901(b)(1), (5).

At trial, Errin Luton of the Grayson County Sheriff's Department testified the Secura system makes accurate recordings of all phone calls coming from the Grayson County jail. Calls may be to an outside phone number or, because all visitation is conducted by phone, to a person visiting a defendant in the jail. Each call begins with a warning that the call may be monitored or recorded and is then digitally recorded.

Goshorn identified her voice and appellant's voice on the recordings in State's exhibits 14, 16, 17, and 19. Goshorn said she knew appellant's cousin, Jack Lester, had spoken with him several times, and was able to recognize his voice. She identified the voices on the recordings in State's exhibits 11, 12, and 21 as those of appellant and Lester. Goshorn also identified the voice of Andrew Rochester, appellant's brother, and Sarah Sellars, appellant's former girlfriend, on the recordings in State's exhibits 13 and 18 respectively, stating she had spoken with each of them numerous times. In fact, Rochester lived with appellant and Goshorn over three months. The trial court admitted the recordings over appellant's objections, in part, that "the witness has not clearly identified the voices contained on these exhibits."

The record shows Goshorn identified each exhibit as well as the voices on each exhibit. When appellant took her on voir dire, Goshorn explained how she knew each individual and how often she spoke with each one. Her testimony was sufficient to support admission of the exhibits under rule 901. *See* Tex. R. Evid. 901(b)(5).

To the extent appellant claims the trial court erred because the State failed to show (1) the recording device was capable of accurately recording, (2) the operator of the recording device

9

was capable of properly operating the device, (3) the recording was accurate and authentic, and (4) the recordings were properly preserved, we note these requirements have been superseded by the adoption of the rules of evidence and are "no longer needed as an authoritative guide for admissibility of 'electronic recordings' including 'sound recordings.'" *Stapleton v. State*, 868 S.W.2d 781, 786 (Tex. Crim. App. 1993). We overrule appellant's second issue.

In his third issue, appellant claims the trial court erred by admitting testimony of extraneous offenses or misconduct because it was not relevant, lacked probative value, and was unduly prejudicial. In his fourth issue, he claims the trial court gave the jury conflicting instructions concerning the purposes for which the jury could consider the extraneous offense evidence.

Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Under rule 403, the trial court will admit relevant evidence unless the probative value of that evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Montgomery v. State*, 810 S.W.2d 372, 38 (Tex. Crim. App. 1990) (op. on reh'g). A proper rule 403 analysis includes, but is not limited to, four factors: (1) probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2008).

Appellant makes no attempt in his brief to analyze any of the appropriate factors and apply them to the facts of his case. Nevertheless, we have reviewed the entire record and, after doing so, cannot conclude the probative value of the objected to evidence was substantially outweighed by unfair prejudice. During trial, appellant presented evidence he was a good father,

did not excessively discipline his children, loved Gabe like his own son, and was not a violent person. On rebuttal, the State offered and the trial court admitted, over appellant's objection, evidence that appellant assaulted his former wife, Sellars, and dragged her out of the house by her hair as well as evidence appellant threw a video game control at one of his daughters when she would not stop crying. The trial court instructed the jury the evidence of other crimes, wrongs or acts was "not admissible to prove the character of a person in order to show conformity therewith" and that they could not consider it for that purpose. The court continued by saying the evidence may be admissible for other purposes such as intent, absence of mistake or accident. In the jury charge, the trial court again instructed the jury:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed and then only for the limited purpose indicated above.

The evidence was relevant, probative, and offered in rebuttal to appellant's portrayal of himself as a gentle, even-handed father. Although the State's need for the evidence was minimal, it took very little time to present evidence of both extraneous offenses. And, in light of the entire record in this case, this evidence had little, if any, potential to sway the jury in an "irrational yet indelible way." We overrule appellant's third issue.

To the extent appellant complains the trial court gave conflicting instructions because those given during trial differed from those in the jury charge, appellant cites no authority to support his complaint nor does he argue or show how he was harmed. Under these circumstances, we conclude his fourth issue is waived. TEX. R. APP. P. 38.1.

11

We affirm the trial court's judgment.

/Molly Francis/

MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.1
120166F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICAH TROY DUNCAN, Appellant

No. 05-12-00166-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 060104.
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered March 22, 2013.


/Molly Francis/

MOLLY FRANCIS
JUSTICE

13