**Freddie LEOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–92–065–CR.**

Court of Appeals of Texas,
Texarkana.

Feb. 9, 1993.

Discretionary Review Granted
May 26, 1993.

Mary Jo Earle, Desoto, for appellant.

Michael Freden, Asst. Dist. Atty., Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Freddie Leos appeals from a conviction for possessing marihuana in an amount greater than 50 pounds but less than 200 pounds. Leos pleaded not guilty to the possession charge but entered a plea of true to the second and third paragraphs of the indictment, which alleged that he had been convicted twice before of felony offenses. The jury found Leos guilty as charged and assessed his punishment at sixty-five years' imprisonment.

Leos contends that the trial court erred (1) in overruling his motion to suppress evidence which he argues was obtained in violation of TEX.HEALTH & SAFETY CODE ANN. §§ 481.120, 481.121 (Vernon 1992), and (2) in admitting an audio tape into evidence without the State having established a proper foundation by identifying all of the voices on the recording.

The State based its case mainly on the testimony of two undercover police officers, Craig Leffler and M.M. Hunt of the Lancaster Police Department. On May 3, 1991, Officers Leffler and Hunt, along with an informant, drove to 2225 Druid Drive in Irving, Texas. They carried with them approximately 85 pounds of marihuana compressed into bricks and sealed in cellophane. There were approximately six people already at the house when the officers arrived.

Hunt testified that he went into the house with Leos and Asa Daniels. Daniels had indicated that the house belonged to him. Hunt further testified that when he complained about the number of people in the garage, Leos comforted him, saying, "It's all right. Everything's cool. Nobody's going to bother you." Once in the house, according to Hunt, Richard Silva opened a box on a table, removed a plastic grocery sack containing a large amount of money, and handed it to Leos. Leos showed the money to Officer Hunt and then handed it to him.

After receiving the money, Officer Hunt returned to the garage where Officer Leffler had remained with a number of other people. Leffler testified that after Hunt and the others emerged from the house, the people in the garage unloaded the marihuana from the officers' vehicle, and the officers left the scene. The police support personnel then moved into arrest the people still present and to take back possession of the marihuana.

During the episode described above, Leffler had on his person a fake pager which contained a microphone. The transmission from this microphone was recorded by an officer in a surveillance vehicle and this recording was admitted into evidence at trial.

Leos first contends that the trial court erred in overruling his motion to suppress the testimony of Hunt and Leffler because this evidence was obtained in violation of Sections 481.120 and 481.121 of the Texas Health & Safety Code. TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp. 1993) states:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Section 481.120 of the Texas Health & Safety Code makes it illegal to deliver marihuana, and Section 481.121 makes it illegal to possess marihuana.

Leos contends that since Hunt and Leffler violated these provisions of the Texas Health & Safety Code by possessing and delivering the marihuana to Leos and his associates, the testimony of the officers should have been suppressed under Article

38.23 because it was obtained in violation of the laws of Texas. Leos further argues that Sections 481.120 and 481.121 do not contain exceptions such as the one contained in Section 482.002(b) which states: "It is a defense to prosecution under this section that the person manufacturing with the intent to deliver or delivering the simulated controlled substance was ... acting in the discharge of the person's official duties as a peace officer." TEX.HEALTH & SAFETY CODE ANN. § 482.002(b) (Vernon 1992).[1]

However, Chapter 481 of the Texas Health & Safety Code does contain a section which states: "This chapter does not impose a liability on an authorized state, county, or municipal officer engaged in the lawful performance of the officer's duties." TEX.HEALTH & SAFETY CODE ANN. § 481.184 (Vernon 1992). Since Hunt and Leffler were acting in the line of duty, their possession and delivery of marihuana falls under the exception contained in Chapter 481. The trial court, therefore, did not err in admitting the officers' testimony. Accordingly, we overrule this point of error.

Leos next contends that the trial court erred when it admitted into evidence the audio tape recorded from the microphone located on Leffler. When the State attempted to introduce the tape into evidence, counsel for Leos objected on the basis that the State failed to lay proper predicate for the admission of such evidence by identifying all of the voices on the tape. Voice identification is required as a condition precedent to admissibility under Rule 901(b)(5) of the Texas Rules of Criminal Evidence. The trial court overruled this objection.

Leffler identified his own voice and the voice of Hunt. A female voice on the tape is identified only as an informer. There are numerous other voices that are not identified. The voice identified as Leffler's asks, "Is that Fred?" The female voice of the informant then replies, "Yes, that's Fred." No predicate was laid for the admission of her response, and no opportuni-

ty is given to the defendant to cross-examine this witness. There is no testimony that the reference was to the defendant in this case, Freddie Leos, but in the context of the testimony this conclusion is suggested.

■ Rule 901(b)(5) of the Texas Rules of Criminal Evidence was taken from the federal rule bearing the same number. In the case of *United States v. Vega*, 860 F.2d 779 (7th Cir.1988), a federal court construed this rule and made the following ruling:

> With respect to the tapes containing voices of speakers other than Vega [the defendant], who were not specifically identified at trial, if the government's case does not depend upon any claim concerning the identity of that speaker, the tape can be admitted even in the absence of an identification of that speaker. For example, if it is only important to the government's case that Felipe Vega and Jesus Zambrana are speaking on a particular tape, the presence on the tape of other individuals who are not pertinent to the case and who are not identified, does not affect the admissibility of the tape.

In the present case, we cannot say that the statement made by the unidentified voice of the informer is in no way pertinent to the State's case. Also, other unidentified voices on the tape suggest that the people at the house understood that they were participating in the purchase of marihuana. Thus, we find that the trial court erred in admitting this evidence. The question now becomes whether such error is harmless.

■ Pursuant to Rule 81(b)(2) of the Texas Rules of Appellate Procedure, after finding error in the proceeding below, we are required to reverse the judgment under review, unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

---

1. TEX.HEALTH & SAFETY CODE ANN. §§ 483.041(c)(5), 483.042(b) (Vernon 1992) also contain exceptions for state, federal and local employees who,

in the line of duty, handle dangerous drugs not covered by the Texas Controlled Substances Act.

■ The statement by the informer does no more than establish that a person named Fred, who might be the Freddie who is a defendant in this case, was present on the occasion in question. Other unidentified voices on the tape suggest that the people in the house understood what was occurring on the occasion in question. The tape was not relied upon to establish any criminal acts by Leos. Leos's presence at the scene had also been established by the direct testimony of Leffler and Hunt and by videotape made at the scene at the time of the arrests. The State relies upon evidence concerning the purchase money to show Leos's awareness of and participation in the transaction. Hunt testified that Leos gave him the money for the purchase of the marihuana. Hunt also testified that he discussed the weight of the marihuana with Leos and that Leos had stated that he (Leos) had received a cut of the money before delivering it to Hunt. Considering the evidence presented by the tape in light of all the evidence presented, we find beyond a reasonable doubt that the trial court's error in admitting the tape into evidence made no contribution to the conviction or the punishment of Freddie Leos.

We affirm the judgment of the trial court.

CORNELIUS, Justice, concurring.

I concur in the judgment and in the majority opinion, except that portion concluding that the admission of the audio tape was error. For the very reasons the majority opinion concludes that the error was harmless, I conclude that the admission of the tape was not error at all, i.e., the unidentified voices were not sufficiently pertinent to the offense to affect the tape's admissibility. *See United States v. Vega,* 860 F.2d 779 (7th Cir.1988).