**Freddie LEOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 359–93.**

Court of Criminal Appeals of Texas.

Sept. 14, 1994.

Mary Jo Earle, on appeal only, DeSoto, for appellant.

John Vance, Dist. Atty., Michael J. Sandlin, Mike Freden, and Martin Miller, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted by a jury of conspiracy to possess more than 50 but less than 200 pounds of marijuana, Tex.Health & Safety Code Ann. § 481.121 (Vernon 1992), and the jury assessed punishment at 65 years confinement in the Institutional Division of the Texas Department of Criminal Justice. The Court of Appeals affirmed. *Leos v. State*, 847 S.W.2d 665 (Tex.App.—Texarkana 1993).[1] We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in failing to apply the pre-rules test set forth in *Edwards v. State*, 551 S.W.2d 731 (Tex.Crim.App.1977), as to the authentication of a tape recording and to determine whether the Court of Appeals erred in its harmless error analysis. We will reverse the Court of Appeals.

Appellant's conviction arose from a marijuana purchase involving undercover police officers. Officer Craig Leffler tape recorded the transaction by means of a wireless transmitter concealed in a fake pager. At trial, the State sought to have the tape admitted as evidence of a drug transaction in which appellant participated.[2] The State emphasized the tape during closing arguments and urged the jury to rely on it during their deliberations.[3]

---

1. Although Appellant's trial took place in Dallas County, the Supreme Court of Texas exercised its power to equalize dockets by transferring the appeal from the Fifth District Court of Appeals in Dallas to the Sixth District Court of Appeals in Texarkana.

2. We note that we listened to the tape and found it nearly incomprehensible. The only voice readily understandable is Officer Leffler's.

3. The substance of the State's closing argument in this regard is as follows:

    .... [Y]ou can take this tape back there, and you can listen to it, and, no, it's not clear.... You hear all kinds of stuff, but if you take that back there, and if you don't believe that everybody in that garage knew exactly what was going on, you listen to that tape, and you'll hear some things. Turn it up as loud as you want. You'll hear "85", clearly hear 85 on that tape. You'll hear "63" on that tape.

Appellant objected to the admission of the tape on the grounds that the State had not identified all of the voices on the tape. While the tape was being played for the jury, the State identified the voices of its two undercover operatives and its informer, but did not identify appellant's voice or the voices of any of the alleged co-conspirators. The trial court overruled appellant's objection and admitted the tape into evidence.

The Court of Appeals held that "[v]oice identification is required as a condition precedent to admissibility under Rule 901(5)" and that, because numerous voices on the tape were not identified, the trial court erred in admitting it.[4] *Leos*, 847 S.W.2d at 667. The Court of Appeals further held that the error was harmless under Texas Rule of Appellate Procedure 81(b)(2). *Id.* at 668.

Appellant agrees with the Court of Appeals that admission of the tape was error, but he nevertheless argues that in failing to address the viability of *Edwards* in light of the Rules of Criminal Evidence, the Court of Appeals implicitly held that the seven pronged predicate set out in *Edwards* was obsolete. Appellant also claims the Court of Appeals erred in finding that the error was harmless. The State responds that the Court of Appeals opinion did not necessarily discard the *Edwards* test, and that appellant only complained about voice identification which is addressed by both *Edwards* and Rule 901. The State further asserts that the tape was admissible because the principal voices were identified. The State alternatively argues that the Court of Appeals was correct in finding the error harmless.

> You'll hear a couple of times, "it's cool." At the very end you'll hear, "Don't worry about it. We'll check it later." It was a quick deal; it was a fast deal, but don't believe it wasn't an important deal.

**4.** The Court of Appeals made no reference to our opinion in *Edwards* but cited a federal decision, *United States v. Vega*, 860 F.2d 779 (7th Cir.1988) which held that under the federal rules of evidence only the voices relied upon by the State need to be identified as a prerequisite to the admissibility of a tape recording.

**5.** *Stapleton* dealt principally with whether the State had laid a proper foundation for the admission of a tape recording as a business record

## I.

■ Prior to the adoption of the Texas Rules of Criminal Evidence the authentication of audio tapes was governed by the test set forth in *Edwards v. State*. In *Edwards* we borrowed from the civil courts a seven step predicate for the admission of a tape recording into evidence:

> .... The cases are in general agreement as to what constitutes a proper foundation for the admission of a sound recording. They also indicate a reasonably strict adherence to the rules prescribed for testing the admissibility of recordings, which have been outlined as follows: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that the changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.

*Edwards*, 551 S.W.2d at 733.

We recently held, however, that the adoption of the Texas Rules of Criminal Evidence "supersede[d] the *Edwards* test; it is no longer needed as an authoritative guide for admissibility of electronic recordings' including 'sound recordings.'" *Stapleton v. State*, 868 S.W.2d 781, 786 (Tex.Crim.App.1993).[5] Accordingly, the Court of Appeals did not, as appellant contends, err in failing to address the test set forth in *Edwards*. Even without the benefit of our opinion in *Stapleton*, the

under Rule of Criminal Evidence 803(6). *Stapleton*, 868 S.W.2d at 785–86. Rule 901 was also considered in tandem. *Id.* We reasoned that the Rules took precedence over the common law under Rule 101(c). Tex.R.Crim.Evid. 101(c). We concluded further, however, that there was no "material inconsistency" between *Edwards* and the combination of Rules 803(6), 901(a) and 901(b) because those rules basically included all of the requirements of *Edwards*. *Stapleton*, 868 S.W.2d at 785. *Stapleton* did not discuss the independent operation of Rule 901 in detail nor did it address the issue of voice identification in particular.

Court of Appeals correctly cited Rule 901 as the controlling authority concerning authentication. Appellant's first ground for review is therefore overruled.[6]

## II.

■ Appellant also claims the Court of Appeals erred in holding that the admission of the tape in violation of Rule 901 was harmless.

■ The Court of Appeals held that admission of the tape was harmless, stating:

The tape was not relied upon to establish any criminal acts by Leos. Leos's presence at the scene had also been established by the direct testimony of Leffler and Hunt and by video tape made at the scene at the time of the arrests. The State relies upon evidence concerning the purchase money to show Leos's awareness of and participation in the transaction. Hunt testified that Leos gave him the money for the purchase of marijuana. Hunt also testified that he discussed the weight of the marijuana with Leos and that Leos had stated that he (Leos) had received a cut of the money before delivering it to Hunt. Considering the evidence presented by the tape in light of all the evidence presented, we find beyond a reasonable doubt that the trial court's error in admitting the tape into evidence made no contribution to the conviction or the punishment of Freddie Leos.

*Leos,* 847 S.W.2d at 668.

Rule 81(b)(2) directs

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, **unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.**

TEX.R.APP.PRO. 81(b)(2) (emphasis added). The question is whether the jury might have been influenced by an error not whether in our judgment the correct result was reached. *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.

Crim.App.1989). A reviewing court should consider several factors in making a harmless error determination, including whether and to what extent the State emphasized the error, the probable impact of the error on the jury, as well as the likelihood that the State would repeat the error if it is held harmless. *Id.*

The Court of Appeals' analysis consists solely of an "overwhelming evidence" test of the sort prohibited by *Harris. Harris,* 790 S.W.2d at 587. Rather than looking at the erroneously admitted tape and determining whether that piece of evidence may have had a harmful effect, the Court of Appeals analyzed the sufficiency of the evidence generally and concluded that the tape was superfluous. In addition, the Court of Appeals failed to consider relevant facts which were pointed out by appellant in his brief to that court.

Conducting a proper harm analysis in accordance with *Harris, supra,* we conclude the Court of Appeals erred in holding that the introduction of the tape was harmless beyond a reasonable doubt. The State emphasized the tape and encouraged the jury to listen to it during their deliberations. Significantly, the State suggested to the jury that if there was any question in their minds as to the knowledge of the parties involved, listening to the tape would resolve that doubt. *See* n. 3, *supra.* Apparently taking the State's suggestion, the first item of evidence requested by the jury during deliberations was the tape. Although the Court of Appeals stated that admission of the tape was not harmful because it was not used to establish any criminal act by appellant, appellant was charged with *conspiracy* to possess marijuana; appellant's presence as well as his actions in the context of the transaction were crucial to the State's theory of liability. Finally, without implying bad faith on the part of the State in this case, one concern in conducting a harm analysis is whether holding the error harmless will lead to repetition of the mistake. Modern cases frequently contain evidence of this nature. We do not think that it would be a great burden to ask

---

**6.** While the Court of Appeals' application of Rule 901 to the facts of the case is *less* than elaborate, appellant does not complain of its application, and the State has not cross-petitioned the Court on that issue. Therefore, the Court of Appeals' application of Rule 901 is not before us.

the State to identify the principal players on a tape recording where it is necessary in order to connect the evidence to the trial at hand.

The judgment of the Court of Appeals is reversed and this cause is remanded to the trial court.

McCORMICK, P.J., and CAMPBELL and WHITE, JJ., dissent.