COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JONATHAN MATHEW KNIGHT, | § | |
| | | No. 08-16-00123-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20150C06154) |
| | § | |

## **O P I N I O N**

A jury convicted Appellant of assault causing bodily injury, family member, and he was sentenced to 270 days of incarceration in the El Paso County Detention Facility. On evidentiary and constitutional grounds, Appellant challenges admission of two items of evidence: (1) a recording of a 911 call; and (2) the computer-aided dispatch report of the call (CAD report). We affirm.

## **BACKGROUND**

On July 4, 2015, at 3:07 in the morning, Officers Lugardo Garcia and Joshua Arroyos of the El Paso Police Department were dispatched to a motel room in El Paso, Texas, to respond to a 911 call reporting assault family violence in progress. A female caller, sounding hysterical and crying, reported she had been hit by her boyfriend and her face was swollen. As she asked for

help, a male voice could be heard in the background and they continued arguing while the call taker asked for further information. During the call, she identified Appellant as her assailant and gave the motel room number among other bits of information. Within minutes, officers arrived on scene.

Appellant answered when officers knocked at the room she identified. As the door opened, they could also see a female inside whom they believed to be the caller who asked for help. Officers immediately separated the parties to speak to them individually. The female identified herself as Valerie Nieto. Initially, Officer Garcia spoke to Nieto inside the hotel room, while Officer Arroyos spoke with Appellant outside in the parking lot.[1]

Officer Garcia described Nieto as being distraught and crying, and he saw "bruising to her face." Officer Arroyos also testified he observed that Nieto had "redness" and injuries to her face, was crying, and appeared to be in distress while speaking to the officers. Officer Garcia took photographs of Nieto's visible injuries, some of which were introduced into evidence. These photographs depicted injuries to her lower lip and to the left side of her face, a cut next to or below her eye, bruising and swelling on the right side of her face, and fresh blood below her nose. Neither Officer Arroyos nor Officer Garcia observed any injuries on Appellant at the time they spoke.[2] Upon concluding their investigation, the officers arrested Appellant, and he was subsequently charged by information with causing bodily injury to Valerie Nieto by striking her about the head with his hand.

---

[1] Neither statement was introduced into evidence. In addition, Officer Garcia took a family violence video statement from the complainant, but that was also not introduced into evidence.

[2] In addition, at trial, the State introduced a booking photograph of Appellant, which did not reveal any apparent injuries to his face.

**The Admission of the 911 recording and the CAD Report**

At trial, the State sought admission of two items: (1) a recording of the 911 call, and (2) the call taker's report pertaining to the call (CAD report). Appellant objected to both exhibits on two grounds: first, that neither exhibit was properly authenticated as the caller did not identify herself during the 911 call and the State failed to sufficiently link the exhibits to the incident reported; and, second, that admission of the exhibits violated Appellant's constitutional right to confront witnesses at trial.

First, the State called Wilmarie Andino, custodian of records for the El Paso Police Department's 911 call center, to testify about retrieval of the records at issue. In a voir dire examination outside the presence of the jury, Andino explained that all calls received through the computer and phone systems of the 911 call center were date and time stamped by the system. As calls are received, the call is routed by the system to the next available call taker and is automatically recorded once the call is answered. While on the call, the call taker documents pertinent information needed for first responders being dispatched.

As a custodian of records, Andino retrieves 911 records by using information such as an address of occurrence, date and time, or a related law enforcement number. Andino testified that all 911 records are made at the time of the call, regularly kept by the El Paso Police Department, and contain firsthand information reported by the 911 caller to the call taker. Andino testified that she personally retrieved both the recording and the CAD report related to the 911 call on the morning in question which were marked as State's Exhibits One and Two. Andino further testified on voir dire that she had listened to the recording, and that she could identify the voice of the call taker, but not the person who made the call.

3

Following Andino, the State called Officer Garcia who testified on voir dire that he was familiar with the complaining witness's voice due to his interaction with her in the motel room on the morning in question. He further testified that he had listened to the 911 recording and believed that the caller's voice on the recording was that of the complaining witness. After hearing arguments from both sides, the trial court ruled in favor of the State as to admission of both the 911 recording and the CAD report of the call.

Before admitting the two exhibits, the State re-called Andino to testify in front of the jury. As before, Andino testified that the 911 recording and the CAD report were records that were regularly kept by the El Paso Police Department, and that they both had an El Paso Police Department number on them, which allowed her to identify records requested when she retrieved them for trial. She further testified on voir dire examination that she personally placed the 911 recording on the CD that the State intended to play for the jury, and that her handwriting was on the outside of that exhibit. Over Appellant's continuing objection, both the recording and the CAD report were admitted into evidence and the recording was played for the jury.

As discussed in more detail below, on the recording, the complaining witness, who is heard crying and upset, immediately states that her boyfriend had "just" hit her in the face, and that she needed help. She identified her boyfriend by name as the Appellant but did not give her own name. A male voice is also heard in the background, and the two can be heard arguing during the call, and the caller can also be heard screaming at him at times, complaining about the injuries he had inflicted on her. At one point, the caller states that Appellant had hit her five times. After the recording was played, Officer Garcia testified he recognized the voices on the recording as being Nieto and Appellant with whom he had interacted after being dispatched to the motel, but

4

he could not identify the call taker.

Following trial, the jury found Appellant guilty of one count of assault causing bodily injury of a family member, as charged in the information, and was sentenced to 270 days in the county jail. This appeal followed.

## DISCUSSION

In four related issues, Appellant challenges the admission of the 911 recording and the CAD report. In Issue One, Appellant contends the trial court abused its discretion and asserts that the 911 recording and associated CAD report were not properly "authenticated" for admission into evidence. In Issue Two, Appellant contends that the trial court should not have admitted the 911 recording because the complaining witness's voice was not sufficiently identified by the witnesses at trial. In Issues Three and Four, Appellant contends that the admission of both the 911 recording and the CAD report violated his right to confront witnesses. We disagree with all four issues.

## AUTHENTICATION OF THE EXHIBITS

### Standard of Review and Applicable Law

Under Texas Rules of Evidence Rule 104(a), a preliminary question to be decided by the trial court is whether to admit evidence at trial. *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). To be admissible, evidence must be relevant; and, if it is not "authentically" what its proponent claims it to be, it is not relevant. *Id.* at 638. To sufficiently authenticate an item of evidence, including sound recordings, Rule 901(a) of the Texas Rules of Evidence provides that the proponent must produce evidence sufficient to support a finding that the item in question is what the proponent claims it to be. TEX.R.EVID. 901(a); *see also Leos v. State*, 883 S.W.2d 209, 211–12 (Tex. Crim. App. 1994) (recognizing that Rule 901 governs the admissibility of

5

electronic recordings, including "sound recordings"). The proffering party may present the testimony of a witness with personal knowledge sufficient to authenticate the proposed evidence. *See* TEX.R.EVID. 901(b)(1). As well, Rule 901(b)(6) provides that the proffering party may submit "evidence that a call was made to the number assigned at the time to: (A) a particular person, if circumstances, including self-identification, show that the person answering was the one called; or (B) a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone." TEX.R.EVID. 901(b)(6). This method may be used to authenticate a call made to a 911 call center, as such calls are made in the regular course of a 911 center's "business of emergency dispatching."[3] *Esnard v. State*, No. 05-02-01812-CR, 2003 WL 22332395, at *2 (Tex. App.—Dallas Oct. 14, 2003, no pet.) (not designated for publication).

Appellate review of a trial court's ruling on the preliminary questions of whether an item of evidence has been properly authenticated is deferential, and the standard of review on appeal is abuse of discretion. *Tienda*, 358 S.W.3d at 638 (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007)); *see generally Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (the trial court's decision to admit evidence is reviewed for abuse of discretion). Therefore, if the trial court's decision on issues of authenticity falls within a zone of reasonable disagreement, it will be upheld on appeal. *Tienda*, 358 S.W.3d at 638; *see also Buntion v. State*, 482 S.W.3d 58, 71 (Tex. Crim. App. 2016).

**Issue One: Linking of State's Exhibits One and Two to the Actual 911 Call**

In Issue One, Appellant argues that the two exhibits that the State entered into evidence—

---

[3] Appellant contends, without citation to authority, that the call was not made to a "place of business." We agree with the Court in *Esnard*, however, that a 911 Call Center operates as a place of business for emergency calls. *Esnard v. State*, No. 05-02-01812-CR, 2003 WL 22332395, at *2 (Tex. App.—Dallas Oct. 14, 2003, no pet.) (not designated for publication).

the 911 recording and the CAD report—were not properly authenticated as being related to the call received on the morning of July 4, 2015, by an unknown female. Specifically, Appellant argues the State failed to present sufficient evidence to link the two exhibits to the actual call that was made by the complaining witness. Appellant contends that Andino's testimony was insufficient to authenticate the exhibits, as she only testified about the 911 call center's "standard practices" in terms of how calls are received and recorded, and how recordings and CAD reports are stored and retrieved. Appellant claims Andino failed to testify with respect to how she established that the two exhibits in question were authentic representations of the recording and CAD report relating to the 911 call that was received on the morning in question. There are several problems with Appellant's arguments.

First, we note that Appellant did not raise this challenge to the evidence in the trial court. To preserve a challenge for appellate review, a defendant must object to the admission of evidence in the trial court, stating the specific grounds for his objection. *See, e.g.*, *Wright v. State,* 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (where defendant only objected to admission of evidence on hearsay grounds, he waived his right to argue that the evidence violated his right to confrontation on appeal); *see generally* TEX.R.APP.P. 33.1 (as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court, stating the grounds for the complaint with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context). Thus, new grounds may not be added on appeal that were not raised in the trial court. *Wright,* 28 S.W.3d at 536; TEX.R.APP.P. 33.1.

Here, the record shows that Appellant objected on the basis of hearsay, Confrontation

7

Clause violation, and a failure to identify the complaining witness's voice on the recording; however, he did not object on the ground that the exhibits were not authentic representations of the records associated with the 911 call received from complainant on July 4, 2015. Thus, we find that Appellant failed to preserve error as to this specific complaint.

Moreover, even if we were to consider this issue preserved for review, we would find it to be without merit, as the exhibits were properly authenticated by Andino's testimony. Appellant does not appear to dispute that Andino had sufficient knowledge regarding the standard procedures followed by the call center in receiving, storing, and retrieving records. And in fact, we note that Andino testified extensively regarding those procedures during both her direct and voir dire examinations.

However, contrary to Appellant's argument, Andino's testimony was not limited to simply explaining the general procedures followed by the call center. Instead, she testified that she was personally responsible for retrieving the exhibits in question the day before trial, and that she knew the exhibits she retrieved were related to the July 4 call, as the numbers on the exhibits correlated to the police number assigned to the case. Andino further testified that before she retrieved the exhibits, they had been in the continuous custody of the El Paso Police Department. Andino also testified that after she retrieved the recording, she placed it on a CD, which had her handwriting on it, thereby enabling her to identify the recording as the same one received by the Call Center on July 4. In addition, Andino testified that she had listened to the recording, and that she could identify the call taker's voice on the recording submitted as evidence.

Further, we note that the CAD report itself had identifying information on it, linking it to the 911 call in question. Specifically, the report had the El Paso Police Department case number

8

on it, date and time stamped at 3:07 a.m. on July 4, 2015, and stated that it related to the 911 call reporting assault family violence in progress at the motel room where the defendant and complainant were later located by law enforcement who responded.

We conclude that this evidence was sufficient to authenticate the exhibits in question as being what they purported to be, i.e., evidence of the call received by the 911 Call Center on the morning in question. *See, e.g.*, *Montoya v. State*, 43 S.W.3d 568, 571 (Tex. App.—Waco 2001, no pet.) (911 recording was properly authenticated under Rule 901, where an officer testified that she was the custodian of the 911 tapes, had listened to the tape in question, that the tape was made in the ordinary course of business at the Fort Worth Police Department, that it was made at or near the time of the events recorded, that the record was made by a person with the responsibility for making such record, and that the record was made by a person with knowledge of the events recorded); *see also Esnard*, 2003 WL 22332395, at *2 (911 call recording was admissible under Rule 901 where custodian of records testified that all 911 calls are recorded and the call related to the business of emergency dispatching); *Kelly v. State*, No. 14-96-00788-CR, 1998 WL 724856, at *4 (Tex. App.—Houston [14th Dist.] October 1, 1998, pet. ref'd) (not designated for publication) (911 recording was admissible under Rule 901 where 911 custodian testified that the call in question came from a convenience store that was robbed on the night of the capital murder case on trial, she was able to identify most of the voices on the tape, and she personally reviewed and copied the relevant portion of the dispatch call). Appellant's Issue One is overruled.

### Issue Two: Authentication of Voice on the 911 Recording

In Issue Two, Appellant contends that the trial court erred by admitting the 911 recording because complaining witness Valerie Nieto did not identify herself on the recording, or

alternatively, that the trial court erred by allowing Officer Garcia to identify Nieto's voice. We disagree.

There are a variety of methods by which a caller's voice may be authenticated or identified on a telephone recording. As Appellant correctly points out, one method of establishing the identity of a caller on a recording is through self-identification. *See, e.g., Mosley v. State*, 355 S.W.3d 59, 69 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (methods of authenticating the identity of a telephone caller include "self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns and other distinctive characteristics, and disclosure of knowledge and facts known peculiarly to the caller"); *Manemann v. State,* 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref'd) (same). In addition, Rule 901 allows for a witness to offer an "opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." TEX.R.EVID. 901(b)(5); *see also Manemann,* 878 S.W.2d at 338 (noting that self-identification is not the only method of identifying a caller's voice, and that instead the testimony of the recipient of a call that he recognized the voice of the caller was "competent to establish the identity of the caller, when the recipient at either a prior or subsequent time has been in the caller's presence and heard him speak"). *Manemann,* 878 S.W.2d at 338 (citing *Gray v. State,* 549 So.2d 1316 (Miss. 1989)).

Moreover, the person making the identification of the caller need not be the recipient of the call, and may instead be a third party, such as a police officer, who has simply listened to a recording of the call and is able to identify the voice due to his familiarly with it. *See, e.g.*,

10

*Diamond v. State*, 496 S.W.3d 124, 142 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (authentication of jail phone calls held proper, in part, because officer interviewed defendant after his arrest and testified that he recognized defendant's voice as the voice on the phone calls); *see also Carreon v. State*, No. 08-00-00521-CR, 2002 WL 725252, at *3 (Tex. App.—El Paso April 25, 2002, no pet.) (not designated for publication) (in drug-delivery case, where undercover officer testified that the two voices on a tape recording were his voice and the defendant's voice, the tape was properly authenticated); *Jones v. State*, 80 S.W.3d 686, 689 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (informant's identification of voice of defendant from whom he made a drug buy was sufficient to authenticate the tape under Rule 901); *Brooks v. State*, 921 S.W.2d 875, 880 (Tex. App.—Houston [14th Dist.] 1996), *aff'd*, 957 S.W.2d 30 (Tex. Crim. App. 1997) (in drug delivery case, where undercover officer recorded a drug transaction and later testified as to the identity of the voices on the recording, the testimony of the officer was sufficient to authenticate the recording).

Here, Officer Garcia testified that he had listened to the 911 recording and was able to identify the voice of the caller as being Nieto based on his interview with her when he responded to the motel room she had described. In addition, he was also able to identify Appellant's voice on the recording based on his interaction with him at the motel as well. We note that in the trial court, Appellant reacted with skepticism about Officer Garcia's ability to identify Nieto's voice based on his limited interaction with her. Ultimately, however, as a finding of fact, the trial court determines Officer Garcia's credibility on the issue. *See Manemann,* 878 S.W.2d at 338 (noting that it is ultimately up to the trier of fact to determine whether the voices on a recording have been accurately identified). On review, we find that the trial court's finding is supported by ample

11

evidence.

Appellant has cited no authority, nor are we aware of any, that would render Officer Garcia's testimony inadmissible or insufficient for purposes of identifying the voices on the 911 recording. We therefore conclude that the trial court did not abuse its discretion in determining that Officer Garcia's testimony was sufficient to authenticate the 911 recording. Appellant's Issue Two is overruled.

## CONFRONTATION CLAUSE

In his third and fourth issues, Appellant argues that both the 911 recording and the CAD report contained testimonial statements in violation of the Confrontation Clause of the U.S. Constitution. Because we find that the statements in question were not testimonial in nature, we disagree.

### Applicable Law and Standard of Review

The Confrontation Clause of the Sixth Amendment provides that an accused shall have the right to confront witnesses in all criminal prosecutions. U.S. CONST. amend. VI. In *Crawford v. Washington*, the U.S. Supreme Court held that the right to cross-examine a witness applies to statements that are considered "testimonial" in nature. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). Therefore, a defendant's Sixth Amendment rights are violated if a witness's out-of-court testimonial statements are admitted at trial, unless the witness was unavailable, and the defendant had had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53-54, 124 S.Ct. at 1365. Hence, to implicate the Confrontation Clause, an out-of-court statement "must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (citing

12

*Crawford*, 541 U.S. at 50–52, 59, 124 S.Ct. at 1363-64, 1368-69); *see also Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004) (noting that the threshold question under a *Crawford* analysis is whether an out-of-court statement was testimonial or non-testimonial in nature); *In re M.H.V.-P.,* 341 S.W.3d 553, 557 (Tex. App.—El Paso 2011, no pet.).

The Court in *Crawford* did not define the term "testimonial," but did identify three types of "core" testimonial evidence, including "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Crawford*, 541 U.S. at 51–52, 124 S.Ct. at 1364 (citation omitted). This type of "core" testimonial evidence includes statements that were made in the course of police interrogation in non-emergency situations, and where the primary purpose of the interrogation was to establish or prove past events potentially relevant to a later criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 813–14, 126 S.Ct. 2266, 2268–69, 165 L.Ed.2d 224 (2006).

Although 911 call takers may not necessarily be law enforcement officers themselves, they are considered an agent of law enforcement, and, in some circumstances, their questions to a caller may be considered the equivalent of a police interrogation. *Davis*, 547 U.S. at 813, 823, 126 S.Ct. at 2268, 2274. Therefore, as a threshold matter, statements made in response to a 911 call taker's questions must be analyzed to determine if they should be considered testimonial under the holding in *Crawford*. *Id.* at 817, 126 S.Ct. at 2270-71.

The test is an objective one, and one of the key questions is whether the primary purpose of the call was to "enable police assistance to meet an ongoing emergency." *Id.* at 828, 126 S.Ct. at 2277; *see also Ford v. State*, No. 08-14-00093-CR, 2016 WL 921385, at *3 (Tex. App.—El Paso Mar. 9, 2016, pet. ref'd) (not designated for publication). Thus, a reviewing court must

13

determine whether the questions asked by the responding call taker were intended to "elicit[] a response from the caller that would enable him to take steps to resolve the emergency," or whether they were "directed at eliciting information about the defendant's actions to be used in a future prosecution." *Ford,* 2016 WL 921385, at *3. Statements made to resolve an ongoing emergency are not typically considered testimonial in nature. *Id.*, at *2. However, once the emergency ends, statements made during a 911 call may thereafter become testimonial. *See Davis*, 547 U.S. at 829, 126 S.Ct. at 2277; *Ford*, 2016 WL 921385, at *3–4. As well, statements that describe past events, rather than events that are occurring in the present, are more likely to be considered testimonial. *See Davis*, 547 U.S. at 830, 126 S.Ct. at 2278 (statements made in response to an officer seeking to determine "what is happening" are less likely to be testimonial than statements made in response to questions seeking to determine "what happened"). Whether a statement is testimonial or not presents a question of law, which is reviewed *de novo*. *See Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

### Issue Three:   911 Recording & Confrontation Clause Requirements

In Issue Three, Appellant contends the trial court committed reversible error asserting that the 911 recording contained testimonial statements in violation of the Confrontation Clause of the U.S. Constitution. Specifically, Appellant argues the call started as non-testimonial but eventually evolved into testimonial statements once complainant spoke in past tense that she was assaulted by Appellant. We disagree.

In *Ford v. State*, we utilized four factors in determining whether statements made during a 911 call should be categorized as being testimonial. *See Ford*, 2016 WL 921385, at *3 (citing *Martinez v. State*, 236 S.W.3d 361, 371–72 (Tex. App.—Fort Worth 2007, pet. dism'd, untimely

14

filed)). These factors are: (1) whether the caller was describing events as they were actually occurring; (2) whether a reasonable listener would recognize that the caller was facing an ongoing emergency; (3) whether the 911 dispatcher's questions were meant to elicit responses in order to resolve the present emergency, rather than to simply learn what had happened in the past; and (4) whether the call took place in an environment that was not tranquil or was unsafe. *Id*. (citing *Martinez*, 236 S.W.3d at 371–72).

Here, Appellant focuses only on the first two factors in the analysis, arguing that Nieto was primarily describing past events during her 911 call, and that any ongoing emergency had ceased by the time she made the majority of her statements. In making this argument, Appellant acknowledges that Nieto began her call by speaking more in the present tense, stating that Appellant had "just hit" her, and that the call therefore "started out as non-testimonial." Appellant argues, however, that the call soon "evolved into testimonial statements subject to the Confrontation Clause," as Nieto began describing events in the "past tense," reporting that Appellant had previously hit her five times. Appellant argues that even though Nieto was crying and hysterical during the call, it was clear that the assault was over, and that Nieto no longer faced an ongoing emergency.

Appellant likens his case to situations compared in *Davis* v. *Washington*, 547 U.S. at 827, 126 S.Ct. at 2276, wherein one complainant provided statements to police while events were happening and the other spoke hours afterward from a place of safety. While we recognize, as the Court did in *Davis*, that a 911 call could in fact begin with non-testimonial statements and could later evolve into testimonial statements depending on the circumstances, we find no evolution in this case.

15

Here, at the very start of her 911 call, Nieto immediately volunteered that she had "just" been hit by Appellant; and further, she later described that Appellant had hit her five times. In context, it was clear that the assault she described had only just occurred and she was asking for police help while she remained in the presence of her assailant. In addition, she described her injuries in the present tense, and stated that she was in current need of medical attention. Therefore, viewed objectively, we conclude that the primary purpose of Nieto's call was to report her current emergency and to receive assistance rather than to act as a witness who is relating a story about something that had occurred in the past but not then needing aid. *See Dixon v. State*, 244 S.W.3d 472, 485 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (call made by complainant of assault, who advised 911 call taker that the defendant had recently hit her, was directed at reporting her current situation, rather than to report past events).

Similarly, based on our review of the 911 recording, we conclude that a reasonable listener would believe that Nieto was still facing an ongoing emergency during the entirety of the 911 call. Throughout the call, Nieto was sobbing and sounded hysterical. At various times she could be heard arguing about her injuries and yelling at her assailant who remained present in the room. Moreover, Nieto expressly stated that she needed "help," and wanted law enforcement to come to her aid which could indicate she remained in fear of further harm.

Moreover, the questions asked by the 911 call taker were not directed at ascertaining what had happened in the past, but rather were directed at ascertaining the nature of Nieto's emergency, her location, and her need for medical attention. Specifically, the 911 call taker asked for the location of the motel where she was located, the room number, if she needed medical attention, the name and description of her assailant, what he hit her with, whether he used any weapons, and

16

whether there were any weapons at the scene. We note that these are the type of questions which a 911 call taker may ask pertaining to the law enforcement response to aid Nieto and to ensure their safety upon arrival. *See, e.g., Ford*, 2016 WL 921385, at *5 (recognizing that a 911 operator may question the caller regarding whether the defendant had any weapons to determine her safety, as well as the safety of the officers who had been dispatched to the scene).

In his briefing, Appellant has not identified any questions asked by the call taker that went beyond what was necessary to resolve the ongoing emergency that Nieto was facing, or that appeared to be directed at information used for a later prosecution. *See Santacruz v. State*, 237 S.W.3d 822, 830 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (where complainant called 911 following an assault for the primary purpose of obtaining assistance, and the primary purpose of the 911 operator's questions were to enable police to assist her, the statements made during the call were deemed non-testimonial).

Accordingly, we conclude that all of the factors set forth above weigh in favor of a conclusion that the statements made on the 911 recording were not testimonial in nature, and that the trial court therefore did not err in admitting the recording in its entirety. Appellant's Issue Three is overruled.

**Issue Four: CAD Report & Confrontation Clause Requirements**

In Issue Four, apart from the 911 call itself, Appellant argues that the CAD report contained testimonial statements, and thus, its admission violated the Confrontation Clause of the U.S. Constitution. Appellant points out that neither the call taker nor the individual who prepared the CAD report from the call taker's notes testified at trial, and the custodian of records acknowledged during her testimony that she did not have personal knowledge of information contained in the

report. Appellant contends the report falls within the "core class of testimonial statements" of concern in *Crawford*, likening statements in the report to various categories of pretrial statements, such as "ex parte in-court testimony," affidavits, custodial examinations, and "prior testimony" that was not subject to cross-examination. Although Appellant acknowledges that the custodian testified at trial that the CAD report was produced for the benefit of the first responders, he contends that the CAD report was nevertheless created "under circumstances which would lead [an] objective witness to believe that [the] statement would be available for use at a later trial." Appellant's complaint appears to be two-fold, first, that he was not able to cross-examine either Nieto about the statements contained in the CAD report, and second, that he was not able to cross-examine the individual who prepared the CAD report about the statements contained therein.

In support of his argument, Appellant relies primarily on the Supreme Court's holding in *Bullcoming v. New Mexico*, 564 U.S. 647, 665, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011), in which the Court held that a report of a blood-alcohol analysis was testimonial in nature within the meaning of the Confrontation Clause. Specifically, *Bullcoming* determined that the analyst who authored the report had prepared it primarily for use in a criminal prosecution. *Id.* Therefore, the Court held that the admission of the report violated the defendant's Sixth Amendment right to confront witnesses, as the analyst was not present in court subject to cross-examination regarding out-of-court statements made in his report. *Id.*

In response, the State contends that CAD reports, unlike the type of reports described in *Bullcoming*, are not prepared for use in prosecution, and are, instead, business records made at or near the time of an event to provide a police response or other emergency aid to a caller. Thus, the State argues that statements contained within a CAD report are not testimonial in nature under

18

most circumstances. In support of its argument, the State relies on *United States v. Hughes*, 840 F.3d 1368 (11th Cir. 2016), *cert. denied*, 137 S.Ct. 1354 (2017), in which that Court addressed a similar argument. *Hughes* noted that the evidence presented at trial established that the primary purpose of a CAD report was to "provide information to the officers who are responding in the field in realtime to allow them to address whatever ongoing emergency is being reported." *Id.* at 1384. The Court further noted that the CAD report in that case consisted primarily of the 911 caller's statements made during the call itself, and those statements were no different than the type found admissible in *Davis*, i.e., statements made by a caller who was facing an ongoing emergency. *Id.* Therefore, the Court held the trial court had not erred in admitting a CAD report. *Id.*

We agree with the State that the statements Nieto made, as contained in the CAD report, were no different than those contained in the 911 call itself. The report simply documented the information given by Nieto during the 911 call, including her location, the name and description of her assailant, her allegation that she had been hit more than once, and her request for police help and medical attention. As set forth above, we have already concluded that Nieto's statements were not testimonial in nature; and therefore, the fact that Nieto was not present in trial and subject to cross-examination did not violate Appellant's Sixth Amendment rights.

Likewise, we also do not believe that Appellant's inability to cross-examine the individual who prepared the CAD report violated those rights. Unlike the statements contained in the analyst's report in *Bullcoming,* in which the analyst made independent statements about the testing that he did and his test results, the individual who prepared the CAD report did not make any independent statements that were testimonial in nature, and instead, simply entered descriptive notes from the 911 call itself. Distinct from *Crawford* concerns, Appellant's objections at trial to

19

the CAD report were focused more on the allegation that the report contained hearsay "off the recording," and it improperly "bolster[ed] … the tape itself[.]"

And finally, we agree with the State that even if the admission of the CAD report was in error, any such error was harmless beyond a reasonable doubt due to its cumulative nature. As the Court of Criminal Appeals has recognized, error in the admission of evidence is harmless where it proves the same fact as other properly-admitted evidence at trial. *See, e.g., Clay v. State*, 240 S.W.3d 895, 905–06 (Tex. Crim. App. 2007); *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). This harmless error analysis applies to alleged *Crawford* errors as well. Thus, in *Davis v. State*, 203 S.W.3d 845 (Tex. Crim. App. 2006), the Court of Criminal Appeals held that when faced with a *Crawford*-error claim, before the error can be deemed harmless, the reviewing court must be convinced, beyond a reasonable doubt, that the admission of *Crawford*-barred evidence "would probably not have had a significant impact on the mind of an average juror." *See Davis*, 203 S.W.3d at 852. In other words, a reviewing court must determine whether there was a "reasonable possibility that the *Crawford* error, within the context of the entire trial, 'moved the jury from a state of non-persuasion to one of persuasion' on a particular issue." *Id*. at 852-53. In that case, the Court determined that the *Crawford* error was harmless beyond a reasonable doubt as it was cumulative of other evidence that was properly admitted at the defendant's trial. *Id*. at 853-56.

The same analysis applies in the present case. As we set forth above, there is nothing in the CAD report, other than minor details regarding when law enforcement was dispatched and arrived on the scene, that differs from the statements that Nieto made during her 911 call. Therefore, as the recording of Nieto's call was properly admitted at trial, and played for the jury,

we conclude that the admission of the CAD report—which added no additional details regarding the assault—would not have had a significant impact on the mind of the average juror. Accordingly, we conclude that any error in admitting the CAD report was harmless beyond a reasonable doubt. Appellant's Issue Four is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GINA M. PALAFOX, Justice

August 15, 2018

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)