

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00073-CR

_____

REY ALFARO GUADIAN, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1633906R

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

By indictment, the State charged Rey Alfaro Guadian with three counts of aggravated sexual assault of a child and one count of indecency with a child by contact. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (iii), (v). In a repeat offender notice, the State further alleged that Guadian had been previously convicted of the felony offense of driving while intoxicated (DWI) and felony repetition. Guadian pleaded not guilty to all counts of the indictment and not true to the repeat offender notice. A jury found him guilty on all counts, found that he was a repeat offender, and assessed his punishment for each count at life in prison and a fine of $10,000. The trial court ordered all four sentences to run concurrently.

Guadian appeals only his sentences, arguing that the trial court erred in the punishment phase by allowing the State to introduce evidence of Guadian's alleged criminal history with a sheriff's department record that was not properly authenticated according to the Texas Rules of Evidence. Because we hold that any error Guadian preserved was harmless, we overrule his issue and affirm the trial court's judgments.[1]

---

[1]Although Guadian was charged, convicted, and sentenced under one cause number, the trial court entered a separate judgment for each count.

## II. BACKGROUND

The jury convicted Guadian of three counts of aggravated sexual assault of a child and one count of indecency with a child by contact.[2] By Guadian's choice, the jury also assessed his punishment. *See* Tex. Code Crim. Proc. Ann. art 37.07, § 2(b). At the trial on punishment, Guadian did not testify, and the State called only one witness: Corporal Homero Carnero of the Tarrant County Sheriff's Office. Corporal Carnero testified that he works "in the error resolution desk," whose main duty is to maintain the accuracy of the office's crime records. A few minutes before testifying, he took Guadian's fingerprints. When Corporal Carnero testified, the State offered the fingerprint card that he had just created with Guadian's inked prints, as well as an older document with Guadian's prints that had been filed in the sheriff's office. Both the card (State's Exhibit 39) and the document from the sheriff's office (State's Exhibit 26) contained Guadian's name, his county identification (CID) number, his date of birth, and a full set of his prints, but the older document, which the State and Corporal Carnero referred to as "the ten-print card,"[3] had a list of the dates and

---

[2]Because Guadian only assigns error to the trial court's ruling at the trial on punishment, we need not summarize the facts giving rise to the charged offenses in this case.

[3]We have previously noted that a ten-print card is a card that contains an "arrestee's identifying information, name, date of birth, sometimes . . . the arrest . . . , along with the roll prints, which are fingertip to fingertip each digit of each hand, and the bottom is just pat-down [palm prints], and that happens during the booking process." *Morgan v. State*, No. 02-19-00374-CR, 2020 WL 5949917, at *2 n.1 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op., not designated for publication).

3

charges on which Guadian had been arrested from 1988 to 1999. Over Guadian's

hearsay objection,[4] the trial court admitted both exhibits in evidence.

Corporal Carnero then explained that anyone booked into the Tarrant County

jail system is assigned a "unique and permanent" CID number that is attached to the

person's fingerprints. Like fingerprints, a CID number is unique to the individual; no

inmate in the Tarrant County jail has the same CID number as any other inmate. The

State then introduced certified copies of records from the Tarrant County Clerk and

Tarrant County District Clerk showing Guadian's convictions on various charges as

far back as 1988.[5] Although the records included more documents from some cases

than others, each exhibit contained a copy of the docket sheet on the case file jacket, a

copy of the judgment reflecting Guadian's conviction and sentence,[6] and a copy of the

charging instrument. For every case, all those documents named Rey Alfaro Guadian

as the defendant, and the charging instruments all contained the same date of birth for

---

[4]When objecting, Guadian told the trial court that he did "not object to the fingerprints themselves." As we will explain in our discussion below, it appears from the record that Guadian's first hearsay objection was limited to statements in the ten-print card, not the newly created card.

[5]The documents were offered and admitted as twelve separate exhibits, marked State's Exhibits 27 through 38.

[6]In one case, Guadian's sentence was probated, and the judgment is thus styled a "probation order." However, the document states that Guadian was adjudged guilty of the offense of driving while intoxicated and open container and sentenced to 120 days in jail and a $400 fine. The court in that case suspended Guadian's sentence and placed him on probation for twenty-four months.

4

him. Corporal Carnero testified to other identifying information in the exhibits, including Guadian's prints and CID number, as well as the dates of the offenses. He referred to both the ten-print card and the inked prints he had taken from Guadian in court that day. When the State moved to admit State's Exhibits 27 through 38 into evidence, Guadian objected "only to the portions of hearsay that appear in these documents." The trial court overruled his objection and admitted all the exhibits in evidence.

State's Exhibit 27 showed that Guadian pleaded guilty to and was convicted of the felony offense of DWI and felony repetition in the Criminal District Court No. 1 of Tarrant County, Texas, in Cause Number 0720498D, on May 28, 1999. The jury found that Guadian was a repeat offender.

## III. DISCUSSION

### A. Preservation of Error

We first address whether Guadian has preserved any error for our review. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because it is a systemic requirement, this court should

5

independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

Guadian presents his appellate issue as follows: "THE TRIAL COURT ERRED IN THE PUNISHMENT PHASE BY ALLOWING THE STATE TO INTRODUCE EVIDENCE OF APPELLANT'S ALLEGED CRIMINAL HISTORY WITH A SHERIFF'S DEPARTMENT RECORD THAT WAS NOT PROPERLY AUTHENTICATED ACCORDING TO THE TEXAS RULES OF EVIDENCE." But Guadian did not make an authentication objection at trial; he objected only to hearsay in the documents. The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

In his brief, Guadian correctly states that "State's Exhibit 26 [the ten-print card] was admitted over a hearsay objection by Appellant as a business[-]record exception." He then quotes the business-records (or "Records of a Regularly Conducted Activity") exception to the rule against hearsay, *see* Tex. R. Evid. 803(6),

6

and cites *Stapleton v. State*, 868 S.W.2d. 781 (Tex. Crim. App. 1993), in support of his argument that the ten-print card should not have been admitted pursuant to this exception.[7] We hold that this comports with his complaint made at trial about the hearsay in the ten-print card. However, because he did not object to the other records of his criminal history (State's Exhibits 27 through 38) on any grounds other than hearsay, and because he does not argue on appeal that those exhibits contained inadmissible hearsay, we also hold that he has forfeited all other error for our review. *See Clark*, 365 S.W.3d at 339. We will therefore review only Guadian's argument that the trial court erred in admitting the ten-print card under Rule 803(6) and that such error was harmful.

## B. Arguments of the Parties

Under Rule 803(6), a record of an act, event, condition, opinion, or diagnosis is not excluded by the rule against hearsay if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted business activity;

(C) making the record was a regular practice of that activity;

---

[7] In *Stapleton*, the Court of Criminal Appeals ruled that a recording of a phone call from a citizen to the police department contained inadmissible hearsay. 868 S.W.2d at 787. Because no one engaged in the police activity had personal knowledge of the information reported by the citizen, the Court reasoned, the factual statements made by her on the call were not covered by the business-records exception provided by Rule 803(6). *Id.* at 784–85.

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration . . . ; and

(E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Tex. R. Evid. 803(6). Guadian argues that this rule should not apply because the State never asked whether anyone had personal knowledge of the information contained in the ten-print card. The State counters that "the nature of the fingerprint card made that specific statement unnecessary" because the card demonstrates that it was made at the time that the fingerprints were made and that it was made by a deputy with knowledge of its contents who had created and signed it. Guadian also argues that the exhibit was not sponsored by the custodian of records, but the State rightly contends that Rule 803(6) does not require the sponsoring witness to be the custodian of records—only a "qualified witness"—and Carnero met this requirement. In the alternative, the State argues that the card was admissible under the public-records exception to the rule against hearsay. *See* Tex. R. Evid. 803(8).

## C. Our Analysis

Assuming without deciding that the ten-print card contained inadmissible hearsay and that the trial court abused its discretion in admitting the exhibit over Guadian's hearsay objection, we are not persuaded that any such error is reversible. Overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of

8

ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Here, Guadian objected to the ten-print card but not the newer card that Corporal Carnero created during trial. Like the ten-print card, the newer card had Guadian's full name, date of birth, and CID number on it. In addition, Corporal Carnero told the jury multiple times—without objection—what Guadian's CID number was. Therefore, Guadian was not harmed by the admission of these pieces of identifying information. *See id.* at 717–18.

Further, when clarifying his objection to the trial court, Guadian referenced the ten-print card by its exhibit number and stated, "There's a fair amount of statements that are made on the second page." Thus, his objection was limited to the statements on the second page of the document. When only part of the offered evidence is admissible, the objecting party must specifically point out which part is inadmissible. *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002).

Guadian contends that the admission of the ten-print card was harmful because it "was the sole basis for admission" of all of his criminal history. The record belies his contention. First, the court documents from Guadian's prior criminal cases were admissible as certified copies of public documents, which are self-authenticating. *See* Tex. R. Evid. 902(2). Second, while Corporal Carnero did refer to a few of the dates listed on the second page of the ten-print card when testifying to the offense dates

9

that appeared on the court documents from Guadian's related cases,[8] every exhibit from Guadian's past criminal cases contained other identifying information that matched the information on Guadian's newer fingerprint card. All but two of the case files had Guadian's unique CID number in them,[9] and all showed the same date of birth for Guadian. His newer fingerprint card also reflects that he is a white male, as do the charging instruments from his past criminal cases.[10] We have held that the State sufficiently linked a defendant to a prior judgment of conviction based on similar matching information. *See Dehorney v. State*, No. 02-17-00157-CR, 2018 WL 1528479, at *2 (Tex. App.—Fort Worth Mar. 29, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that State sufficiently linked defendant to prior judgment where defendant's "rather unique name" matched name of defendant in the judgment, and documents associated with prior judgment reflected same birthdate, race, and sex of defendant).

---

[8]Four of Guadian's arrests—for DWI in 1994, assault bodily injury family violence in 1995 and again in 1997, and DWI-felony repetition in 1999—were listed on the *third* page of the ten-print card and thus not covered by his specific objection.

[9]It appears that the case files from the two oldest cases—a 1988 conviction for DWI and open container and a 1991 conviction for driving with license suspended—do not include Guadian's CID number.

[10]All the charging instruments from Guadian's prior cases indicate his sex as "M" for male, but the letters indicating his race do not appear to be legible in the two oldest case files.

10

Through Corporal Carnero's testimony, the State linked what was arguably the most critical of the prior convictions—the 1999 DWI felony that was the basis of the repeat-offender charge in the present case—to Guadian by his CID number and the date of the offense. And court documents from that 1999 case showed that Guadian's 1988 and 1993 DWI convictions were elements of the felony charge to which Guadian had pleaded guilty. Additionally, Corporal Carnero testified that he had compared and matched fingerprints from several of the prior case files to the prints that he had just taken from Guadian in court.[11] Finally, the State elicited the following testimony from Corporal Carnero without objection:

> Q. And so the prints that you received from the gentleman sitting to the far right over there, the defendant in today's case, the prints that you took from him, are they a match to all of the judgments that have prints in -- in evidence?
>
> A. They are.
>
> Q. And are the prints that you took in court today from the defendant a match to that certified ten-print card that's kept on file with the Tarrant County Jail that's also associated with that county identification number?
>
> A. Yes.
>
> Q. So do you have any concerns about any of the prior convictions that have been submitted into evidence as to whether or not they belong to the defendant in today's case?

---

[11]Specifically, Corporal Carnero matched four of the prior cases to Guadian through the prints. Six of the other exhibits contained at least one inked print, but Corporal Carnero testified that those prints were not legible.

11

Q. I have no concerns.

Q. Okay. Are they the same person?

A. Yes.

Thus, the State was able to link Guadian to the court documents from his prior criminal cases through other, properly admitted evidence.

Under Rule 44.2(b), we must disregard any nonconstitutional error that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). Based on our foregoing analysis, we have a fair assurance that the admission of the hearsay on the second page of the ten-print card did not influence the jury or that it had but a slight effect, if it was even error. We overrule Guadian's lone appellate issue.

## IV. CONCLUSION

Having overruled Guadian's issue, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 16, 2023